SECURITY NATIONAL BANK OF MASON CITY, Appellee, v. W. G. C. BAGLEY et al., Appellants.

**SCHOOLS AND SCHOOL DISTRICTS:** Directors—Courses of Study—
1 **Discretion.** The power of school directors to prescribe courses of study (Sec. 4250, Code of 1924) embraces the discretion merely to

authorize, without expense to the district or the pupils, the installation in the schools of a non-compulsory, copyrighted system of thrift instruction which necessarily contemplates the deposit of the child's savings in some bank or banks selected without dictation by the board.

**SCHOOLS AND SCHOOL DISTRICTS:** Government—Proper Review of
2    **Board Action.** When school directors are invested by statute with control over a named subject-matter, their action with reference to such subject-matter must be reviewed through an appeal to the county superintendent, and not through a resort to the courts; and this is true howsoever inexpedient, improper, and ill-advised the action may appear to be. Court action is permissible only when the board steps outside the statutory zone of legal action. (See Book of Anno., Vol. 1, Sec. 4298, Anno. 8 *et seq.*)

**SCHOOLS AND SCHOOL DISTRICTS:** Officers—Non-disqualifying In-
3    **terest.** The adoption by a school board of a resolution is not rendered nugatory because of the affirmative vote of a particular member by the fact that, subsequent to the adoption, the private corporation of which the particular member of the board was an officer entered into a contract with a third party for the carrying out of the purposes and objects of said resolution. (See Book of Anno., Vol. 1, Sec. 5673.)

**UNFAIR COMPETITION:** Essential Elements—Rejected Opportunity.
4    A claim of unfair competition because a particular bank was chosen as the depository of funds arising from a thrift system introduced into a public school falls when it is made to appear that the complainant was given full opportunity to be such depository.

**MUNICIPAL CORPORATIONS:** Fiscal Management—Right of Tax-
5    **payer.** The fact that a party plaintiff is a "taxpayer" does not, in and of itself, give him any standing to question the action of public authorities when such action does not work any expenditure of public funds. (See Book of Anno., Vol. 1, Sec. 10967, Anno. 25 *et seq.*)

Headnote 1:   35 Cyc. p. 900.   Headnote 2:   32 C. J. p. 252; 35 Cyc. p. 907.   Headnote 3:   35 Cyc. p. 908 (Anno.)   Headnote 4:   38 Cyc. p. 760 (Anno.)   Headnote 5:   35 Cyc. p. 1049 (Anno.)

Headnote 1:   24 R. C. L. 634.   Headnote 2:   24 R. C. L. 525.

*Appeal from Cerro Gordo District Court.*—M. H. KEPLER, Judge.

NOVEMBER 23, 1926.

Suit for an injunction to restrain the operation of a system known as "Thrift," in the public schools of the city of Mason

City, under which deposits made by pupils in said schools were deposited in the appellant First National Bank. · Decree was · entered granting an injunction, and the defendants appeal.— *Reversed.*

*Blythe, Markley, Rule & Smith,* for appellant First National Bank of Mason City.

*Alfred W. Bays,* for appellant Thrift, Inc.

*Smith & Feeny,* for all other appellants.

*Senneff, Bliss, Witwer & Senneff,* for appellee.

FAVILLE, J.—Thrift, Inc., is the owner of a copyrighted system of instruction intended to promote the teaching and inculcating of thrift in the pupils of the public schools. The board of directors of the Independent School District of Mason City, on or about August 13, 1923, adopted the following resolution:

"Resolved that Thrift, Inc., be and they are hereby authorized to install and maintain their system of banking in the public schools of Mason City, Iowa, providing a local bank or banks can be secured by Thrift, Inc., to carry the accounts and furnish the necessary supplies and service. Thrift, Inc., guarantees that there will be no expense to the schools or pupils."

After said resolution was adopted, Thrift, Inc., entered into a contract with the First National Bank of Mason City, to act as a depository for the funds saved by pupils in the schools, and to furnish, without expense to the school district, the necessary paraphernalia, including pass books, posters, money bags, etc., for carrying out the system. The record discloses that, under said contract, the bank was to pay Thrift, Inc., for acting as said depository, and was to perform all of the services required of it in carrying out said system without any expense to the school district or to any of the pupils attending said school. The money saved by the various pupils was turned over by them to the teachers, and was deposited in said bank. Interest was paid thereon to the pupils. The purpose and object of the system were to inculcate thrift, the systematic saving of money, and self-denial and economy. The appellee alleges that it is a tax-

1. SCHOOLS AND SCHOOL DIS- TRICTS: direc- tors: courses of study: discre- tion.

payer within said school district; that it is engaged in the banking business; and that the carrying out of said system creates unfair competition in its business.

I.   We first direct our attention to the proposition as to whether or not injunction will lie, to restrain the action of the board of directors in adopting the system in question for the

2. SCHOOLS AND SCHOOL DISTRICTS: government: proper review of board action.

purpose of teaching thrift in the public schools. Under our statutes, school districts are corporate bodies, and have "exclusive jurisdiction in all school matters" in the territory covered by them, and are authorized to "exercise all the powers granted by law.". Section 4123, Code of 1924. Our statutes provide for the election of a board of directors, to manage the affairs of school corporations.   Code Section 4125.   They clothe the board of directors with the power to "prescribe courses of study for the schools of the corporation."   Code Section 4250.   A similar provision was in force at the time of the action by the board of directors involved in this cause.   Code of 1897, Section 2772.   The legislature, in addition to the broad powers conferred by said statute, has definitely prescribed that certain things,— namely, reading, writing, spelling, arithmetic, grammar, geography, physiology, United States history, principles of American government, American citizenship, American history, civics of the state and nation, physical education, agriculture, domestic science, manual training, the effect of alcoholic stimulants, narcotics, and poisonous substances,—shall be taught in all or a part of the grades in the public schools of this state.   Chapter 214, Code of 1924.   Outside of the definite and specific things which are required to be taught in the public schools, a very large discretion is vested in the board of directors with regard to prescribing what courses of study shall be taught.   The legislature has not vested such power in the courts or in any other tribunal.   It is true that the board of directors may attempt to act in the administration of school affairs in such a manner as to be wholly outside of and beyond the authority vested in it by the legislature.   In the event that the board of directors exceeds its authority, the courts have the undoubted power to grant injunctive relief and restrain the illegal and unauthorized act. Such has been our uniform holding.   *Knowlton v. Baumhover*, 182 Iowa 691; *Hume v. Independent Sch. Dist.*, 180 Iowa 1233;

*Kinzer v. Directors of Ind. Sch. Dist.,* 129 Iowa 441; *Hinkle v. Saddler,* 97 Iowa 526; *Burkhead v. Independent Sch. Dist.,* 107 Iowa 29; *Peterson v. Pratt,* 183 Iowa 462; *Hufford v. Herrold,* 189 Iowa 853. On the other hand, if the action of the board is within the power conferred upon it by the legislature and pertains to a matter in which the board is vested with authority to act, then the courts cannot review the action of the board and call in question the manner of the exercising of the discretion of the board in regard to a subject-matter over which it has jurisdiction. *Templer v. School Township,* 160 Iowa 398; *Knowlton v. Baumhover,* supra; *Clay v. Independent Sch. Dist.,* 187 Iowa 89; *Munn v. Independent Sch. Dist.,* 188 Iowa 757; *Hufford v. Herrold,* supra. See, also, *Lytle Inv. Co. v. Gilman,* 201 Iowa 603. A review of a discretionary matter is by appeal to the county superintendent, and from the decision of such superintendent to the superintendent of public instruction of the state. *Munn v. Independent Sch. Dist.,* supra; *Clay v. Independent Sch. Dist.,* supra; *Hufford v. Herrold,* supra.

The question then arises whether the act of the board of directors of the school corporation in adopting the system in question for the teaching of thrift in the public schools was wholly beyond the power and authority vested in the board of directors under the statute. If so, then a court has jurisdiction to enjoin the act of the board. If it was not beyond such powers, then the question of whether or not the exercise of the discretion vested in the board was in an improper manner is not for the determination of the courts, but by the method of appeal, as pointed out by statute.

Coming now to the particular act in question in this case, we think it cannot be denied, under the record, that the instruction in thrift, as outlined and taught by the system adopted by the board of directors in this case, comes properly and legally within the contemplation of a "course of study." The teaching of economy, self-denial, and saving is by a definite and well defined system or plan. It is, we think, clearly within the power of the board of directors of a school corporation to determine whether or not such a course of study shall be prescribed for the public schools of the corporation, and whether it shall be maintained or not. The general assembly designated by legislative enactment that certain specified subjects shall be taught in the

public schools, and has left the matter of determining and prescribing the courses of study as to all other matters within the power and discretion of the board of directors. Unless there be something in connection with the subject-matter of this prescribed course that transcends and exceeds the power vested in the board of directors, the courts have no authority to interfere by injunction and restrain the action of the board. From an examination of the copyrighted system of instruction which the board adopted in the instant case, we find nothing therein by which the board of directors exceeded its authority and discretion so that the act may be deemed to be one wholly beyond its jurisdiction. As before stated, if the act of the board in adopting the system is so unwise, ill-advised, and improper as to amount to an abuse of the vested discretion, then appellee's remedy is solely by appeal to the county superintendent to review such discretion.

It is contended in behalf of appellee that the adoption of the particular system in question was a violation of the authority and power lodged in the board of directors, because of the fact that, as a part of the system, the money of the pupils which is saved was required to be deposited in a specified bank. This is really the crux of this case. It is the very gist of appellee's complaint and contention. The trial court was of the opinion that the board exceeded its powers by reason of the fact that a contract was made between Thrift, Inc., which owned the system, and the appellant bank, and that the operation of the system required that the money of the pupils should be deposited in said bank. The court suggests in its findings that the depository could be determined by the child or its parents, and that the requirement that, in carrying out the adopted system, the money should be deposited in a designated bank, or in any bank, was beyond any power vested in the board of directors. The record establishes beyond any question that an integral part of the designated system required that the money saved by the pupils under the system be in fact deposited in an actual bank. The underlying principle of the system is to teach saving through thrift, and, as a part of this instruction, to demonstrate that money saved and deposited in a bank accumulates interest. The record clearly discloses that the whole scheme, plan, and system would be innocuous and impossible of successful operation unless

the money so saved and collected was actually deposited in a bank, and drew interest. As a part of the system, the pupil is taught to have a pass book of an actual, not an imaginary, bank, and to receive interest from the bank on the deposits made. The scheme contemplates the use of a bank, and not some other kind of depository.

At this point it is to be noticed that there is no contract whatever between the school district and the appellant bank. The contract is between the school district and Thrift, Inc., which owned the copyrighted system. In carrying out the system, the use of some one or more banks is required. The school district did not contract with the bank, and by the terms of the resolution inaugurating the system in the public schools, Thrift, Inc., was required to secure some bank to act as depository without expense to the schools or to the pupils. The record shows that Thrift, Inc., endeavored to secure the appellee and other banks in Mason City as depositories, and that they refused to act as such. The matter of the selection of a bank to act as depository rested wholly between Thrift, Inc., and the bank with which it could make a contract to act as a depository and to furnish the necessary supplies for the carrying out of the system. The school corporation had nothing whatever to do with this contract. It was not a party to it in any way. All that its resolution required was that Thrift, Inc., should provide that *a bank* should act as a depository, and that the supplies for the carrying out of the system should be furnished without expense to the pupils or the school corporation. Our query at this point is whether or not the act of the board of directors in inaugurating this system as a part of the curriculum of the public schools was beyond its power and authority under the statute, because, as a necessary incident to the carrying out of the system, the money of the pupils was required to be deposited in a bank or banks. We are of the opinion that the feature of the system which required money to be deposited in an actual bank or banks, where interest accumulated on it, such bank or banks to be selected by Thrift, Inc., did not render the resolution of the board of directors in inaugurating the system of instruction an act beyond the legislative power conferred upon it, and hence one which the courts could enjoin.

As we understand the record, the pupils are not compelled

to take part in the system of thrift as taught. They are *encouraged* to do so. If they have no savings, they have no use for the bank. If they want to save "on their own account," without regard to the school or the Thrift system, and put their savings in a bank of their own choosing, there is nothing to prevent them from so doing. However, if they follow the designated system, they must follow it in all its details.

We are not called upon to pass upon the advisability or propriety of the inauguration of such a system in the public schools. We confine our ruling to the sole question that is capable of judicial review under such circumstances, to wit: Was the act of the board wholly illegal? We hold that it was not. If the inauguration of the system is inexpedient, improper, ill-advised, or an abuse of the discretion lodged in the board of directors, the remedy is not by judicial action, but by appeal to the proper authorities for review of the action of the board. This is especially true because matters of school administration are kept very closely in the hands of the people themselves.

"This is as it should be, and the court should hesitate long before using its extraordinary powers of injunction or mandamus to control the administration of school affairs where there is no clear showing of fraud or other flagrant wrong." *Clay v. Independent Sch. Dist.*, 187 Iowa 89, at 99.

II. It is contended that the resolution of the board authorizing the inauguration of the system in the public schools was never legally adopted. The precise point made is that Bagley, the president of the school board, was vice president of the First National Bank, and that he voted for the adoption of the resolution. It appears that, at the meeting of the board of directors at which the resolution authorizing the inauguration of the system in the public schools was adopted, there were four members present, one of whom was vice president of the First National Bank, and another was vice president of the City Commercial Savings Bank in said city. The latter member did not vote. It is to be noticed that the resolution authorizing the installation of the system in the public schools did not provide for any contract between any bank and the school district, nor did it provide that the bank or banks to be selected by Thrift, Inc., to carry the accounts and furnish the supplies, should be

3. SCHOOLS AND SCHOOL DISTRICTS: officers: non-disqualifying interest.

the First National Bank, or any designated or particular bank. The resolution authorized the installation of the system, "providing a local bank or banks can be secured by Thrift, Inc., to carry the accounts." At that time, Thrift, Inc., had no contract with the First National Bank, and there was nothing in the situation that disqualified Bagley, although vice president of said First National Bank, from voting upon such resolution authorizing the inauguration of the system. The fact that Thrift, Inc., made a contract with the First National Bank after such authorization had been granted by the board did not operate retroactively, and render invalid and illegal the action of Bagley, as a member of the board of directors, in voting for the resolution. There is no claim or proof of fraud, conspiracy, or connivance at this point.

It is the general and well established rule that it is improper and illegal for a member of a municipal council or other similar body to vote upon any question properly before such body in which he is personally interested, and where his personal rights will be affected by the vote. 28 Cyc. 337; *James v. City of Hamburg,* 174 Iowa 301; *Harrison County v. Ogden,* 133 Iowa 677; *Peet v. Leinbaugh,* 180 Iowa 937; *Town of Hartley v. Floete Lbr. Co.,* 185 Iowa 861; *Krueger v. Ramsey,* 188 Iowa 861. These, and other similar cases where the action has been rendered illegal because of the vote of one personally interested, are cases where such personal interest existed at the time of the action, and the party was pecuniarily affected by the action in which he participated. The facts of the instant case do not bring it within the above rule. There was no contract at any time between the school board and the bank of which Bagley was an officer. The resolution merely provided that Thrift, Inc., was to secure a local bank or banks as the depository. There was nothing in the action that in any way bound Thrift, Inc., to make a contract with the First National Bank, or with any other particular bank. The undisputed testimony shows that Thrift, Inc., attempted to make the same kind of a contract with the appellee bank that was made with the First National Bank, but it was declined. We do not think that the fact, under all of the circumstances as shown by the record in this particular case, that, subsequent to the adoption of this resolution by the school board, a contract was made between Thrift, Inc., and the First National Bank,

renders the action of the board of directors in adopting the resolution void because Bagley was, at the time, an officer of the First National Bank. The facts do not bring the case within the rule of our cases. As bearing somewhat on the question herein discussed, see *Escondido Lbr., H. & G. Co. v. Baldwin*, 2 Cal. App. 606 (84 Pac. 284); *Kerr v. State ex rel. McDaniel*, 65 Ind. App. 102 (116 N. E. 590). Furthermore, the action of the board of directors in adopting the resolution was subsequently approved and ratified at a later meeting where Bagley's vote could not affect the result.

III. The appellee alleged in its petition that the establishment of the system of teaching thrift in the public schools and the designation of the appellee bank as a depository for the

4. UNFAIR COMPE-
TITION: essential
elements: re-
jected oppor-
tunity.

money to be deposited, constituted unfair competition. The appellee does not rely upon this allegation to sustain its right to maintain this action, and obviously the appellee could not maintain this action against the school district, under the facts of this case, upon such ground.

The appellee, however, alleges that it is a taxpayer within the said school district. The mere fact that appellee is a taxpayer within the said school district does not give it a standing

5. MUNICIPAL COR-
PORATIONS: fiscal
management:
right of tax-
payer.

to maintain an action to enjoin the school board from installing the system of thrift in the schools, under the undisputed and established facts in this case. No portion of the public funds is used in any way in connection with the carrying out of the system in the public schools. A definite part of the plan is that it shall be carried on without any expense to the school district or to the pupils. The appellee, as a taxpayer in said district, cannot be affected in the slightest degree by the inauguration of this system, because no portion of the public funds is used, and the taxes which the appellee pays as a taxpayer are in no way increased, nor are they diverted to any improper purpose. A taxpayer can maintain an action, under proper circumstances, where his pecuniary rights are in some way affected; but the mere fact that he is a taxpayer does not give him a standing to question the action of a body like a school board, where no interest or right of his is affected in the least degree, and where no public funds are improperly disbursed or used,

and the taxes are in no degree affected. Such has been the uniform holding of the courts under similar circumstances. *Sperry v. Kretchner*, 65 Iowa 525; *Clay v. Independent Sch. Dist.*, 187 Iowa 89; *Snyder v. Foster*, 77 Iowa 638; *James v. Consolidated Ind. Dist.*, 194 Iowa 1224; *Stone v. City of Oconomowoc*, 71 Wis. 155 (36 N. W. 829); *Bell v. City of Platteville*, 71 Wis. 139 (36 N. W. 831). See, also, *Lytle Inv. Co. v. Gilman*, supra. The right of the appellee to maintain the action was challenged by the appellants, and the trial court should have dismissed the appellee's petition, if for no other reason, upon the ground that there was no allegation or proof in the record that furnished any basis for a right in the appellee to maintain the action.

The decree of the trial court is reversed, and a decree in accordance with this opinion may be entered in this court, or in the trial court, as appellant shall elect.—*Reversed*.

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.