Laurence H. Henschen, Appellant, v. Board of School Inspectors of School District No. 86, Will County, Illinois et al., Appellees.

Gen. No. 8,451.

Opinion filed July 29, 1932.

SAMUEL W. KING, for appellant.

JOHN C. COWING, for certain appellee.

FRANK J. WISE, for certain other appellee.

MR. JUSTICE JETT delivered the opinion of the court.

This is an appeal from a decree entered by the circuit court of Will county dismissing the bill of Laurence H. Henschen, appellant, in his case against board of school inspectors of School District No. 86, Will county, Illinois, and the members of said board, namely, James L. Longley, Harley J. Hart, C. H. Olin, L. A. Touzalin, Wm. D. Hickey, J. F. Mowat, John G. Brennan and Margaret W. Skinner, as acting treasurer of said board, and also against Adam Groth & Company, a corporation, Ernest H. Swenson and Dallas C. Bippus, appellees, and entering an order against the said Laurence H. Henschen, appellant, for costs of suit.

In his said bill of complaint the said Laurence H. Henschen, appellant, among other things alleges that he is a resident of Will county, Illinois, within the territorial limits of School District No. 86 in said county

and was and is the owner of property within said School District No. 86 on which taxes were levied and collected by the board of school inspectors for the year 1927 and since said time, and which said taxes were paid by the complainant; that the schools in said School District No. 86, at the time of the happening of the matters and things in the bill of complaint alleged, were under the control of the board of school inspectors of School District No. 86, being seven in number; that Margaret W. Skinner, one of the defendants, was acting as treasurer of said board of school inspectors; that said James L. Longley is and was, at the time of the matters and things charged to have taken place in said bill of complaint, a member of said board of school inspectors of said School District No. 86, and was at said time chairman of its building committee, which said committee had charge of school buildings and the erection of new buildings in said district; that at said time the said James L. Longley was a stockholder and an officer of Adam Groth & Company, a corporation, one of the defendants, and was holding the position of president and was acting as its general manager, which said company was carrying on the business of furnishing, cutting and selling cut stone and other building materials; that in June, 1928, said board of school inspectors advertised for bids for the improving, repairing and building of additions to the Farragut, A. O. Marshall and Woodland school buildings, and thereafter the said board of school inspectors let the contracts for the improving, repairing and building of an addition to the Farragut school building to Dallas C. Bippus, as general contractor and one of the defendants, and to Ernest H. Swenson, general contractor, for the improving, repairing and building of additions to A. O. Marshall and Woodland school buildings; that said Bippus thereafter entered upon the performance of the contract for his work on the Farragut school building and Swenson entered upon the per-

formance of the contracts for his work on the Marshall and Woodland school buildings; that the said Swenson, in accordance with the prices and estimates furnished by said Adam Groth & Company, a corporation, let and awarded the contract amounting to, to wit, $2,400 for the furnishing and supplying of cut stone and building material on the Woodland school building to Adam Groth & Company, a corporation; that said Swenson, in accordance with the prices and estimates so furnished by Adam Groth & Company, let and awarded the contract amounting to, to wit, $3,100 for the furnishing and supplying of cut stone and building materials on the Marshall school building to said Adam Groth & Company, a corporation; that the said Bippus, in accordance with the prices and estimates furnished by said Adam Groth & Company, a corporation, let and awarded the contract amounting to, to wit, $7,000 for the furnishing and supplying of cut stone and other building material to the said Adam Groth & Company; that said Adam Groth & Company, in accordance with contracts and orders placed by the said Swenson and Bippus respectively, entered into the fulfilment of the same and delivered said cut stone and building materials to the said school buildings for the sums of money as above set forth.

It is further alleged that Longley was a member of said board of school inspectors of said District No. 86, and was chairman of its building committee and as such chairman had active charge and management of matters and things pertaining to the handling and operation of the various school buildings of said district and pertaining to the erection of said additions to the said Farragut, Woodland and Marshall school buildings, and in his capacity as such member of the board of school inspectors did, at a meeting of said board on, to wit, the 23rd day of July, 1928, move that the bids for the erection of the addition to said Woodland school building be opened, which motion was car-

ried; that Longley did thereupon vote for the motion to award the general contract for the erection of said addition to the Woodland school building to Swenson, which said motion was carried; that Longley seconded a motion that the attorney for the board draw up a contract for the said addition with said Swenson and that the president and secretary of the board be authorized to execute the same on behalf of the board, which motion was carried; that Longley, on July 30, 1928, at a meeting of said board, made a motion that the general contract for the addition to the Farragut school building be awarded to Dallas C. Bippus and voted for said motion which was carried; that said Longley, in his capacity as a member of said board on frequent occasions did thereafter at various meetings of said board make motions for and vote for various payments to be made on all the aforesaid contracts to the said Swenson and Bippus; that the said Longley, at the time aforesaid, was a stockholder and officer in the said Adam Groth & Company, a corporation, and was and still is actively engaged in the management of the affairs of said Adam Groth & Company as its president.

The bill then charges that it is contrary to the statutes, the common law and public policy of the State for any member of any board of school inspectors to be interested directly or indirectly in any contracts or orders with said board of school inspectors or school district of which he is an officer, and that the action of the said Swenson and Bippus in placing said orders as aforesaid with the said Adam Groth & Company, a corporation, for the furnishing and delivery of stone and building materials to the said school buildings was void and illegal, etc.

The appellant in his said bill prayed that upon a final hearing the appellees, their officers and agents may be restrained by injunction from paying any further amounts of money to said Adam Groth & Company, a

corporation, upon any of the alleged orders or contracts which said appellees or any or either of them may have had for the furnishing of any cut stone or building materials to said Woodland, A. O. Marshall and Farragut school buildings; and further prayed that the said Adam Groth & Company, Swenson and Bippus may be required to account to said board of school inspectors for any and all amounts of money which may have been paid, or may be paid during the pendency of the suit, to said Adam Groth & Company, on any of the alleged orders or contracts for furnishing cut stone or building materials to any and all of the aforesaid school buildings, and may be required by a decree of the court to refund and pay back to said board any and all payments which have been paid or which may be paid during the pendency of the suit to said Adam Groth & Company, on any of the alleged orders and contracts for the furnishing of cut stone or building materials to any and all of the aforesaid school buildings.

To the bill of complaint all of appellees interposed demurrers except Swenson and Bippus. The demurrers were argued and taken under advisement by the court and appellant presented to the court his motion for a default of Swenson and Bippus for a failure to appear and plead to said bill of complaint, and for a decree *pro confesso* against Swenson and Bippus. The court entered a decree sustaining the demurrers to the bill and denied appellant's motion for default and decree *pro confesso* against Swenson and Bippus for want of equity in said bill, and appellant then elected to stand by his bill of complaint and the court dismissed the bill for want of equity as to all of appellees in the cause and further ordered that appellant pay the costs and that execution issue therefor, and this appeal followed.

The demurrers admit the truth of all the things that are well pleaded. It appears that appellee, Adam

Groth & Company, is and for a long time past has been engaged in the business of furnishing cut stone and building materials; that James L. Longley, president of Adam Groth & Company, at the time of the commencement of this suit and for many years prior thereto, was a member of appellee board of school inspectors of District No. 86. On or about June 23, 1928, the said board of school inspectors let contracts for the improving, repairing and building of additions to the Farragut, Marshall and Woodland school buildings belonging to said district to Ernest H. Swenson and Dallas C. Bippus, general contractors. No question is raised by the bill of the appellant as to the validity and legality of all of the proceedings incident to such letting and to the execution of said contracts. Swenson and Bippus proceeded to carry out their respective contracts and in progress thereof purchased cut stone and building materials to be used in said buildings from Adam Groth & Company. In the purchase of said cut stone and building materials it is conceded that there was no fraudulent practice and that the prices paid for said materials to Adam Groth & Company were not excessive and in no manner worked to the detriment or hardship of the board of school inspectors of School District No. 86.

Appellant seeks by reason of the allegations of his bill and argument based thereon to draw the inferences that the actions of Longley in voting payments to Bippus and Swenson made him and his employer, Adam Groth & Company, financially interested in the original contracts. There is nothing in the record to dispute the fact that at the time of the letting of the original contracts to Bippus and Swenson there was no agreement or understanding on the part of said contractors with Adam Groth & Company concerning the furnishing of cut stone and building materials. The furnishing of prices and estimates and the letting of

contracts for the furnishing of cut stone and materials were all done subsequent to the letting of the original contracts and there is nothing in the record in any manner tending to intimate that a subletting was in anywise predicated upon a prior understanding or agreement on the part of the general contractors and Adam Groth & Company. There is nothing in this record which can be construed as showing that at the time of the letting of the original contracts to Swenson and Bippus that Adam Groth & Company had any interest directly or indirectly in the contracts. With the element of fraud entirely eliminated the sole point at issue as we understand it from appellant's bill and his argument, is whether the contractors, Swenson and Bippus, by reason by having contracted with the said board of school inspectors were bound to refrain from purchasing materials necessary to the execution thereof from anyone connected with said board of school inspectors.

In view of the allegations of the bill, the question now is, What is the law that arises out of such facts?

As to the contention of the appellant that a contract made in violation of an expressed statutory provision is inoperative and void, we quite agree, but the question arises, Do the facts as alleged in the bill of complaint call for an application of this rule?

*Fredericks v. Borough of Wanaque,* 95 N. J. L. 112, 112 Atl. 309, involved a contract for the furnishing of speed signs and snow plows for the city. The contract was let by the city officials to Fredericks, and Fredericks bought lumber for the use of his contract from a member of the council committee who had let the contract. A dispute arose as to the bill which was objected to by the mayor and suit was brought by Fredericks to collect. In the District Court Fredericks was nonsuited, and the Supreme Court of New Jersey reversed the decision. Upon an appeal to the court of

errors and appeals, in sustaining the Supreme Court, the court said:

"There is no evidence in the case that the employment of the plaintiff was undertaken as the result of any understanding or agreement between Riker (the alderman) and plaintiff, or that the materials cost the plaintiff more at Riker's yard than they could be procured for elsewhere, or that the borough is in any manner dissatisfied with the work, but, on the contrary, the borough has accepted the signs and plows and has them in use. The argument therefore is reduced to the inquiry whether one who obtains a contract from a municipality for public work is impliedly bound as a condition to legal performance, to refrain from purchasing materials for the execution of the work from one who happens to be a member of the governing body of the municipality. . . . We are referred to no case which intimates that in the absence of a corrupt understanding or agreement of the contractor with a member of the council voting for the contract, for the purpose of evading the provisions of the Crimes Act, a resolution of the municipality, otherwise legal, is rendered illegal by the subsequent action of the contractor in purchasing his material from a recognized source of supply, the proprietor of which happens to be a member of the governing body which awarded the contract, and that the contract itself thereby becomes nugatory. The contention of the defendant quite obviously is resolvable upon the fallacious argument of conduct *post hoc* and not *propter hoc;* for manifestly the test of the legality of the contract must be determined as of the time when the resolution was passed, and not by the free act of the plaintiff in purchasing materials. If it was free of criminal taint at its inception, the subsequent action of the contractor in executing the contract cannot relate back so as to invalidate it, unless such *ex post facto* action can be connected with a prior corrupt agreement or understand-

ing with a member of the governing body, in pursuance of which the resolution was passed.''

Applying this well considered case to the facts at issue, it is apparent that there was no fraud or collusion proven or even alleged which would carry the taint of illegality back to the original contract. In fact, counsel concedes that there was no fraud on the part of either Adam Groth & Company or James L. Longley in the subsequent purchase of the contractors of the materials for use on the building contracts. Counsel for appellant further admits that the prices paid by the contractors to appellees were not excessive.

In vol. 44 Corpus Juris, page 94, it is said: ''If an officer at the time a city contract is entered into has a subcontract for the furnishing of materials to the contractor, his interest in the principal contract operates to invalidate it. But if his contract is entered into after the making of the principal contract, the latter is not invalidated, in the absence of any understanding or agreement at the time the principal contract was made that the officer should have the subcontract for the furnishing of the materials.''

The rule last above announced is followed in *Security Nat. Bank of Mason City v. Bagley,* 202 Iowa 701, 49 A. L. R. 705, and 210 N. W. 947. The case arose over the action of the school board of Mason City, Iowa, authorizing Thrift, Inc., to install their system of banking in the public schools of Mason City, provided that a local bank or banks could be secured by Thrift, Inc., to carry the accounts and furnish the necessary supplies and services. After the letting of the contract to Thrift, Inc., the company entered into a contract with the First National Bank of Mason City, Iowa, to act as a depository for the funds saved by the pupils in the schools. Bagley, the president of the school board, was vice president of the First National Bank and voted for the adoption of the resolution awarding the contract to Thrift, Inc. It was contended

that the contract was void by reason of this fact. The court in its opinion says:

"The resolution authorized the installation of the system 'providing a local bank or banks can be secured by Thrift, Incorporated, to carry the accounts.' At this time Thrift, Incorporated, had no contract with the First National Bank, and there was nothing in the situation that disqualified Bagley, although vice president of said First National Bank, from voting upon such resolution authorizing the inauguration of the system. The fact that Thrift, Incorporated, made a contract with the First National Bank after such authorization had been granted by the board did not operate retroactively and render invalid and illegal the action of Bagley, as a member of the board of directors, in voting for the resolution. There is no claim or proof of fraud, conspiracy, or connivance at this point. It is the general and well established rule that it is improper and illegal for a member of a municipal council or other similar body to vote upon any question properly before such body in which he is personally interested and where his personal rights will be affected by the vote. (Citing cases.) These, and other similar cases, where the action has been rendered illegal because of the vote of one personally interested, are cases where such personal interest existed at the time of the action and the party was pecuniarily affected by the action in which he participated. The facts of the instant case do not bring it within the above rule. There was no contract at any time between the school board and the bank of which Bagley was an officer. The resolution merely provided that Thrift, Incorporated, was to secure a local bank or banks as the depository. There was nothing in the action that in any way bound Thrift, Incorporated, to make a contract with the First National Bank, or with any other particular bank. . . . We do not think the fact, under all of the circumstances as shown by

the record in this particular case, that subsequent to the adoption of this resolution by the school board, a contract was made between Thrift, Incorporated, and the First National Bank, renders the action of the board of directors in adopting the resolution void because Bagley was at the time an officer of the First National Bank.''

In the instant case at the time the contracts were awarded to Swenson and Bippus for the remodeling of the school buildings, there was no understanding of any kind between the contractors and Adam Groth & Company, and the contractors were free and at liberty to purchase their materials and cut stone from any dealer they chose, and the fact that subsequently Swenson and Bippus did purchase materials and cut stone from Adam Groth & Company cannot act retroactively so as to invalidate the original contract of the school board, which at the time it was executed was legal and free from fraud.

*O'Neill v. Town of Auburn*, 50 L. R. A. (N. S.) 1140, is a case in which the contract for a street improvement was sought to be held void for the reason that the contractors purchased material necessary to said contract in the open market from a corporation in which municipal officers held stock and the Supreme Court of Washington in deciding the cause held that material for street improvements made necessary by a change in the specifications, purchased in the open market by the contractor from a corporation in which municipal officers have stock, does not nullify the improvement contract under a statute providing that no officer shall be interested, directly or indirectly, in any contract with the town.

In *Escondido Lumber, Hay & Grain Co. v. Baldwin*, 2 Cal. App. 606, 84 Pac. 284, it was held that the mere fact that a solvent contractor for the construction of a schoolhouse, without any previous agreement or arrangement therefor, purchased lumber necessary to

the fulfilment of his contract from a corporation in which one of the trustees of the school district was a stockholder, and of which he was a director and joint manager, did not bring the contract within the inhibition of a statute declaring that no school trustee must be interested in any contract made by the board of which he is a member, and that any contract made in violation of such provision is void, so as to prevent such corporation from recovering on orders drawn for the amount due under the contract, and assigned through an agent to the corporation, in payment for the lumber. In its decision the court said: "The mere fact that the contractor, without previous arrangement or agreement, saw fit to buy of a corporation for which one of the trustees was an agent, certain materials used in the construction of the house would not render the contract void, voidable, or ordinarily subject it to merited criticism. The only possible conflicting interest which could in any sense be said to exist, whereby the trustees' act could be influenced, would be in connection with the acceptance of the building when completed. But it is not pretended or claimed that the building was not properly constructed, from which the formal acceptance would be imperative."

In *Finn v. State ex rel. McDaniel*, 66 Ind. App. 432, 114 N. E. 9, the court construed a statute that is very similar to the statute of the State of Illinois, which reads as follows: "No member of the common council . . . of any city or incorporated town of this State, shall, either directly or indirectly, be a party to or in any manner interested in any contract or agreement, either with such city or incorporated town, or with any officer, board, clerk, deputy or employee of such city or incorporated town, for any matter, cause or thing, by which any liability or indebtedness is in any way or manner created or passed upon, authorized or approved by such council . . . or by any member there-

of. . . . Any contract in contravention of the foregoing provisions shall be absolutely void."

In construing the above statute the court said: "Did the legislature, in enacting such statute, intend it to include contracts between the general contractor and materialmen? . . . By the language used the legislature has eliminated city officials not parties to, connected with, or interested in the original contract made with the city by other parties, but who simply furnished materials in the regular way to such general contractor, and no rule of construction would permit its being read into the statute."

It is also argued by the appellant that the court committed error in denying his motion for a default and decree *pro confesso* against appellees Swenson and Bippus, contractors. It will be remembered that the decision of the court in sustaining the demurrers was a final decree effective against all of the defendants and there was nothing further to be decided by the court. As to the said Swenson and Bippus it does not appear from the record that they had any special or different defense or rights personal to them and they have no relation other than those argued on behalf of the other appellees.

In *Griffiths v. Griffiths,* 198 Ill. 632, it appears that but two of the defendants appeared in the court below and demurred to the bill filed. The demurrer was general and upon a hearing was sustained. It was urged upon the court that it was error to dismiss the bill as to all of the defendants, and the court, speaking at page 637, among other things said: "The demurrer by the two defendants made an issue upon the bill, which, being sustained, left nothing to be decided by the court. It does not appear that complainant asked that it be retained as to the defendants not appearing, for the purpose of determining any rights personal to them, and it is perfectly clear that the complainant could have no equities against them distinct from her

rights against those who did not appear. The court having determined that upon the face of the bill the complainant was not entitled to the relief prayed, might of its own motion have dismissed it.''

In vol. 21 of Corpus Juris, page 452, the following rule is announced: ''Where a demurrer, putting in issue the entire equity of the bill, is filed by a part of the defendants, if it is sustained the bill should be dismissed as to all.''

We are of the opinion that the court was within the rule in denying the motion of appellant for default and for a decree *pro confesso* against Swenson and Bippus, contractors. In reaching a conclusion in this case we are not unmindful of the statutory provisions in our State touching upon the duties and responsibilities of public officers as found in our Schools Act, Cities and Villages Act and Officers Act, which are clear in prohibiting public officers or any character from being interested, either directly or indirectly, in public contracts, but the instant case does not turn upon that situation. It is quite plain from the pleadings and argument of appellant that neither Adam Groth & Company nor James L. Longley, had any interest, directly or indirectly, of any kind whatsoever in the contracts let to Swenson and Bippus, either at the time of their letting or subsequently. The mere fact that in due course of business, after the contracts had been let, Swenson and Bippus saw fit to become customers of Adam Groth & Company, raises no basis for fraud and in fact no fraud is claimed and this incident alone, as is clear from the cases above cited, would not be sufficient to act retroactively on the validity of the original contract. If the contract at its inception was bona fide and legal and no understanding was had or entered into between the contractors and appellees, whereby the contractors were bound to purchase their material and cut stone from appellees, then no act of

the contractors could render the contract entered into with the appellees either void or voidable, and no provision of the statutes above referred to or any other statute that we have been able to find can be construed as prohibiting or in any manner limiting the rights of a contractor, who has in good faith obtained a public contract, from thereafter purchasing his material or supplies or doing business with a person, firm or corporation, any member of which may be a public officer and connected with the public body through which he originally obtained his contract and in the absence of fraud and connivance, such as in the present case, there is no legal basis upon which the acts of the appellee corporation in selling to the contractors, Swenson and Bippus, can be criticized in the slightest degree.

Appellant has cited a number of cases of the Appellate and Supreme Courts of our State in support of his contention. We have examined them and we fail to find that in any of them a state of facts is presented as is found in this cause presented to us for our consideration. After diligent search we have been unable to find any case reported in our State based upon a similar state of facts as presented by the record before us. We have, after due consideration, in view of the rule as announced by the courts of our sister States, reached the conclusion that the circuit court did not commit error in sustaining the demurrers to the bill of complaint of appellant and dismissing the bill and entering an order against him for costs. The order and decree of the circuit court of Will county will therefore be affirmed.

*Order and decree affirmed.*