HAROLD E. BASSETT *v.* JOHN J. DESMOND, TOWN MANAGER OF MILFORD, ET AL.

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and DALY, Js.

Argued October 15—decided November 17, 1953

*Ephraim E. Sinn,* for the appellant (plaintiff).

*Richard H. Lynch,* for the appellees (defendant Desmond as town manager and individually).

O'SULLIVAN, J.  The plaintiff is a resident and tax-payer of the town of Milford.  He originally brought

suit against John J. Desmond in his individual capacity and as town manager of Milford. Subsequently, The Michaels Art Bronze Company, hereinafter called the company, was, on its own motion, made a party defendant. The plaintiff sought an injunction to restrain Desmond as town manager from carrying out the terms of a contract between the town and the company for the installation of parking meters on the streets of Milford. The plaintiff also sought to recover for the benefit of the town the sum of $3500 from Desmond individually on the theory that he had illegally expended public funds in having the town hall painted. The court found the issues for the defendant Desmond on all of the five counts of the complaint, and from the judgment rendered the plaintiff has appealed.

The case readily divides itself into two parts of which the first deals with the parking meter contract. As to this part, the finding, as corrected, narrates the following material facts: Early in 1951, the then acting town manager, named DeBard, advertised for bids for the installation of parking meters in Milford. The company submitted what proved to be the lowest proposal. On May 10, 1951, DeBard, acting pursuant to a vote of the town council, accepted this proposal. The pertinent part of the contract thus entered into was that the town agreed to buy and the company agreed to sell 160 parking meters for the price of $58.50 per complete unit, delivered at and erected in Milford. Of this figure, not over $4.50 was to represent freight and installation costs. The town was to collect the coins deposited in the meters. The receipts were to be sent to the company until the cost of freight and installation had been liquidated. Thereafter, the parties were to share equally in the receipts until the com-

pany had received the remaining $54 due for each unit. When this event occurred, the town was to be under no further obligation to the company.

Subsequently, the meters were installed at locations determined by the police authorities, and parking lines were painted on the street by town employees regularly assigned to painting street lines and crosswalks. The cost of the paint for this operation was $28. On July 1, 1951, the meters were put in operation. The total receipts taken out of the coin boxes from that date until June 19, 1952, the time of trial, was $11,042.29. All of these receipts have been deposited in a special fund, and at no time have they been commingled with the general funds of the town. The company has been paid monthly in conformity with the contract, and the town has retained the share of the receipts to which it is entitled.

Under one of the terms of the contract, the town agreed to keep the meters in good repair. Repairs have been negligible and, whenever needed, have been handled by a police sergeant in line with his regular duties. Parking violations have been supervised, and collections from the meters have been made, by police officers as a part of their routine patrol. The meters have greatly increased the efficiency of the police in supervising parking restrictions. The town budget made no provision for any expense connected with installing the meters. Before they were erected, the plaintiff made written demand on DeBard to repudiate the contract as illegal because of several reasons set forth in the letter. On June 11, 1951, Desmond succeeded DeBard as town manager. In this action, as we have already said, the plaintiff seeks to enjoin Desmond from performing the contract.

The plaintiff's claims attacking the legality of the parking meter contract need not be detailed or discussed at length because he is confronted by an insurmountable barrier. He has no standing to obtain the relief which he seeks. It is true that Connecticut has always recognized the jurisdiction of its courts to entertain suits instituted by taxpayers to enjoin the officers of a town from performing illegal acts. *Sauter* v. *Mahan,* 95 Conn. 311, 314, 111 A. 186; *Mooney* v. *Clark,* 69 Conn. 241, 244, 37 A. 506; *New London* v. *Brainard,* 22 Conn. 553, 557. It is a fundamental concept of judicial administration, however, that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity. *Waterbury Trust Co.* v. *Porter,* 130 Conn. 494, 498, 35 A.2d 837. For this reason the plaintiff, relying as he was upon his status as a taxpayer of the town, was obligated to prove some pecuniary or other great injury to himself. It was not enough that he could qualify as a taxpayer. He had to go further. He had to establish that the alleged illegal contract would, if carried out by Desmond, result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury. *Cassidy* v. *Waterbury,* 130 Conn. 237, 245, 33 A.2d 142; *Pueblo* v. *Flanders,* 122 Colo. 571, 574, 225 P.2d 832; *Golden* v. *City of Flora,* 408 Ill. 129, 132, 96 N.E.2d 506; *Security National Bank* v. *Bagley,* 202 Iowa 701, 710, 210 N.W. 947; *Jaeger* v. *Hillsboro,* 164 Kan. 533, 537, 190 P.2d 420; 18 McQuillin, Municipal Corporations (3d Ed.) § 52.13; 52 Am. Jur. 3.

The plaintiff does not maintain that an irreparable injury has befallen him, nor do the facts justify such an assertion. The only point stressed by him in sup-

port of the claim that his taxes may be affected is that the town agreed to "keep the meters purchased by it in good repair." The plaintiff argues that this provision of the contract imposed an obligation on the town to use its general funds, if repairs to the meters were made during the life of the contract; that, since no appropriation had been made for the purpose, the agreement of the town to accept this obligation was invalid; and hence that the entire contract was illegal.

This argument is based upon a construction of the contract which we are not prepared to follow. In the first place, there is no express contractual provision requiring the town to resort to its general funds whenever expense should be incurred as the result of repairing the meters. It is equally true that there is no express provision that the town's share of the receipts from the meters shall be used for that purpose. However, the entire scheme of the contract, as disclosed by the language used in the light of the situation of the parties at its execution, indicates an intention on their part that the town, in making the payments in conformity with its contractual obligations, was to utilize only the receipts taken from the meters. If, however, we assume that the provision quoted above has two possible constructions, by one of which the agreement could be held valid and by the other void or illegal, the former is to be preferred. *Brown* v. *Slater,* 16 Conn. 192, 195; 3 Corbin, Contracts, p. 93. It follows that, since the town did not agree to use the general funds to meet the expense for repairs to the meters, the plaintiff was unable to establish that his taxes would be affected. The court was correct in holding that he had no standing with respect to the parking meter contract.

The other part of the case deals with the contract

for painting the town hall. As to this, the court found these additional facts: The budget of the town for the fiscal year beginning October 1, 1950, included an item of $1250 for "Repairs & Improvements" to the town hall. During May, 1951, the then manager, DeBard, requested bids for painting the outside of the town hall. The lowest bid received was submitted by D. I. Chapman Company in the amount of $3500. With the prior assent of the town's finance committee, the town council, at a regular meeting held on May 31, 1951, approved various budgetary transfers, including one of $3500 to the budget item for repairs and improvements to the town hall. When this had been done, the council, on June 4, 1951, authorized DeBard to accept the Chapman bid.

The foregoing recital discloses a problem other than that presented by the meter contract. The situation with respect to the painting contract is different, since the contractor was concededly paid from the town general funds, that is, from revenue derived in part from the plaintiff's taxes. The plaintiff had standing before the court, then, if he proved that the payment for the painting job was illegal, since it directly affected him in a pecuniary manner. Nor was his standing lowered in any degree because the pecuniary effect upon him was extremely small. *Beard's Appeal,* 64 Conn. 526, 534, 30 A. 775.

The purpose of the council in transferring $3500 from one appropriation to another was to make ample funds available to meet the cost of the painting job. The council was warranted in taking this action only if it complied with the provisions of the local council-manager act. 25 Spec. Laws 740, as amended by 25 Spec. Laws 1313. Section 7 of chapter 1 of that act provides that "in case of emergency the council may transfer unexpended and unencum-

bered funds from the appropriation of one board or department to another board or department."

The finding is silent as to the existence or lack of existence of an emergency, without which the council could not have legally authorized the transfer in question. *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513, 515, 9 N.E.2d 550. Nor is there anything in the finding, other than what may be gleaned from rather strained inference, indicating that the funds so transferred were unencumbered. Without facts before us on these matters we are unable to determine the legality of the council's action. The court must pass upon these additional matters, and a new trial, limited to that feature of the case, must be had.

There is error in part; the judgment is affirmed except as regards the fourth and fifth counts, and as to those counts a new trial is ordered, limited to a determination as to the existence of an emergency and, if one existed, as to whether the funds transferred by the council were unencumbered.

In this opinion the other judges concurred.