HERBERT JOHN DOUGLAS *v.* HOSPITAL OF ST. RAPHAEL ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE NO. 148404

Memorandum filed September 9, 1976

*O'Connell & Brown,* for the plaintiff.

*Tyler, Cooper, Grant, Bowerman & Keefe,* for the defendant Anesthesia Associates of New Haven, and for the individual defendants D'Elia, DelPizzo, Golia, and Kazsanjian.

*W. W. Walsh,* for the defendant Hospital of St. Raphael, and for the defendant Sister Louise Anthony.

MIGNONE, J. The present matter requires a determination of whether the demurrer addressed to the ninth count of the plaintiff's complaint by the defendants, the Anesthesia Associates of New Haven and the individual physicians who are members thereof, DelPizzo, D'Elia, Kazsanjian, and Golia, must be sustained. The demurrer alleges (1) that the plaintiff failed adequately to allege that he was injured in his business or property by the violation of the Connecticut Anti-Trust Act alleged in the ninth count and therefore lacks standing to raise the claim set forth therein, and (2) that the ninth count fails to state a cause of action against the defendants in that it fails adequately to allege that the plaintiff was injured in his business or property by the alleged violation of the Connecticut Anti-Trust Act set forth therein.

The plaintiff has filed a very lengthy and involved complaint based on the provisions of the recently enacted Connecticut Anti-Trust Act. General Statutes c. 624, §§ 35-24 to 35-45. He has brought suit against the defendant Hospital of St. Raphael, and against a group of physicians practicing anesthesiology under a contract with the hospital as members of a professional corporation known as Anesthesia Associates of New Haven. The plaintiff himself is a physician who alleges that he is a certified fellow of the American College of Anesthesiology and a certified diplomate of the American Board of Anesthesiology.

The allegations of the complaint set out that the plaintiff had been an employee of the defendant Anesthesia Associates for a three-year period up to March of 1976, during which time he held privileges to practice his specialty at the hospital and was on the medical staff there. In March of 1976, his employment was terminated by the defendant Anesthesia Associates. He thereafter sought permission from the hospital to practice anesthesiology as a physician in private practice, but that was denied him on the ground that only members and employees of the defendant Anesthesia Associates were permitted to practice anesthesiology at the hospital pursuant to a contract effectively in force.

On May 19, 1976, the plaintiff filed an amendment to the complaint setting forth a ninth count which incorporates paragraphs one through sixteen of the first count and paragraphs seventeen through twenty-six of the fifth count of the complaint. Paragraphs twenty-seven and twenty-eight of the ninth count then allege that:

"All fees, rates, prices and/or quotations charged by the defendant Hospital, defendant AANH and/or defendant doctors for anesthesia services performed at the Hospital are agreed upon and fixed by the named defendants.

"As a result of the aforementioned facts, the named defendants did knowingly and unlawfully combine, conspire, agree and have an understanding together with each other and/or with divers other persons for the purpose or with the effect of fixing, controlling or maintaining prices, rates, quotations or fees in violation of Section 35-28, General Statutes."

The parties have submitted comprehensive legal memoranda raising the issue of whether the plain-

tiff has alleged a valid basis upon which to invoke the provisions of the Connecticut Anti-Trust Act relied on by him in his complaint.

The questions raised are of first impression in Connecticut. By way of informative background, it may be noted that Connecticut joined the ferment of the new antitrust jurisprudence in 1911, the year the United States Supreme Court handed down its seminal ruling in *Standard Oil Co.* v. *United States,* 221 U.S. 1. The Connecticut act, which became § 53-310 of the General Statutes, in its single short paragraph provided that "[a]ny person who, for himself or as a member of any firm or an officer or agent of any corporation, conspires with or enters into any combination or agreement with any other person or any firm or corporation for the purpose of fixing or maintaining a higher price, at whole-sale or retail, for ice, coal or any other necessity of life than would prevail except for such conspiracy, combination or agreement, or of limiting or restraining the production, manufacture, shipment or sale of any such commodity for the purpose of increasing the price thereof, shall be fined not more than one thousand dollars or imprisoned not more than five years or both." General Statutes § 6503 (Rev. 1918). See Brodigan, "The Connecticut Anti-trust Act," 47 Conn. B.J. 12. As that article brings out, § 53-310 remained law in Connecticut until 1971 when Public Acts 1971, No. 608, § 22, the forerunner of the presently effective Connecticut act, was enacted, repealing § 53-310.

It is self-evident that the Connecticut antitrust legislation in issue herein was based on the federal antitrust enactments. This posit must frame any discussion of the issues herein.

The court notes for the record what would appear to be a jurisdictional omission. There is no allega-

tion of compliance with § 35-37, which requires that "[a]ny person filing a complaint, counterclaim, or answer, for any violation of the provisions of this chapter shall, simultaneously with the returning of the same to superior court, or in the case of pendent state law claims, to federal court, mail a copy of the complaint, counterclaim, or answer, to the attorney general."

A resolution of the legal issues presented herein requires some analysis of the provisions of the Connecticut act. Implicit in the sections of chapter 624 is the fact that they concern themselves with "trade" or "commerce." Section 35-26 makes unlawful any contract, combination, or conspiracy in restraint of any part of trade or commerce. Section 35-27 deals with monopolization or attempt to monopolize "any part of trade or commerce." Section 35-28 is captioned and deals with "Acts unlawful when purpose or effect is restraint of trade or commerce." Section 35-29, whose caption reads "Acts unlawful where effect is substantial lessening of competition or creation of monopoly," also concerns itself with "any part of trade or commerce." Section 35-30 spells out the application of chapter 624 to "any part of trade or commerce" in this state.

"Trade or commerce" are clearly the dominant chords and must be basically defined. Webster's Third New International Dictionary defines "trade" as "the business of buying and selling or bartering commodities: exchange of goods for convenience or profit." The same dictionary defines "commerce" as "the exchange or buying and selling of commodities especially on a large scale and involving transportation from place to place."

Given the paucity of legal interpretation of the precise issue herein, we must accept the premise advanced by the defendants that the Connecticut

Anti-Trust Act must be interpreted in the context of the applicable federal decisions. Two Connecticut Superior Court decisions have dealt peripherally with the Connecticut Anti-Trust Act. *Connecticut Association of Clinical Laboratories* v. *Connecticut Blue Cross, Inc.*, 31 Conn. Sup. 110; *Connecticut State Medical Soc.* v. *Connecticut Medical Service, Inc.*, 29 Conn. Sup. 474. Both involve motions for temporary injunctions and do not address themselves to the precise issue herein. *Connecticut Association of Clinical Laboratories* does emphasize (p. 114) that decisions interpreting the federal Sherman Anti-Trust Act, 26 Stat. 209, as amended, 15 U.S.C. §§ 1–7 (1970), are of aid in interpreting the Connecticut Anti-Trust Act.

The federal decisions make abundantly clear that there are two inescapable requirements for standing to bring an antitrust action seeking treble damages: (1) a plaintiff must show that he has suffered an injury to his "business or property"; and (2) any injury claimed to have been sustained must be shown to be "by reason of" the specific antitrust violation alleged. 15 U.S.C. § 15.

Section 35-34 of the Connecticut Anti-Trust Act, dealing with injunctive relief, treats "threatened loss or damage to its property or business," and § 35-35 affords a recovery of treble damages to "[t]he state, or any person, including, but not limited to, a consumer, injured in its business or property by any violation of the provisions of this chapter."

The United States Supreme Court has interpreted the meaning of the phrase "business or property" as used in 15 U.S.C. § 15 in *Hawaii* v. *Standard Oil Co.*, 405 U.S. 251, 264. That case makes clear (p. 264) that, "[l]ike the lower courts that have considered the meaning of the words 'business or property,' we conclude that they refer to commer-

cial interests or enterprises." See *Reibert* v. *Atlantic Richfield Co.*, 471 F.2d 727, 730 (10th Cir.), where the court states that "[f]or the appellant to satisfy the business or property prerequisite, he must demonstrate that his job is a commercial venture or enterprise."

The second sine qua non of actionability requires the plaintiff to establish that he sustained injury or damage by reason of the antitrust violation. The plaintiff, in the substantive allegations of his complaint, claims that he was prevented from exercising his right to practice anesthesiology at the defendant hospital by reason of the contract existing between the defendants Anesthesia Associates and the Hospital of St. Raphael. The result of that, he claims, was reduction of income, embarrassment, loss of a fee of one patient, and his being forced to start practice outside the New Haven area. He makes no specific allegation that his claimed damages resulted from a price-fixing conspiracy.

*Reibert* v. *Atlantic Richfield Co.*, supra, 731, succinctly deals with the "by reason of" and "by" requirement set out in §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. "This prerequisite boils down to complainant proving that the antitrust violations are the proximate cause of his injury. Two elements are necessary to demonstrate proximate cause: (1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws." See *Billy Baxter, Inc.* v. *Coca-Cola Co.*, 431 F.2d 183 (2d Cir.).

The defendants emphasize in their memorandum of law that the other approach to standing explained

in some of the federal decisions is that the plaintiff must show that he was within the "target area" of the alleged price-fixing scheme. Various decisions in the Second Circuit Court of Appeals have explained that approach. *Calderone Enterprises Corporation v. United Artists Theatre Circuit*, 454 F.2d 1292 (2d Cir.), discusses that aspect of the issue of standing, stating (p. 1295) : "In a series of decisions over the last 15 years, in all of which certiorari was denied by the Supreme Court, this court has committed itself to the principle that in order to have 'standing' to sue for treble damages under § 4 of the Clayton Act, a person must be within the 'target area' of the alleged antitrust conspiracy, i.e., a person against whom the conspiracy was aimed, such as a competitor of the persons sued. Accordingly we have drawn a line excluding those who have suffered economic damage by virtue of their relationships with 'targets' or with participants in an alleged antitrust conspiracy, rather than by being 'targets' themselves." And that case brings out further (p. 1296) that "it is necessary to use a rule of reason in construing the requirements of § 4 of the Clayton Act as to standing, just as such a rule has been adopted by courts in determining whether restraints, other than *per se* violations, transgress §§ 1 and 2 of the Sherman Act. *Northern Pacific Ry. Co.* v. *United States*, 356 U.S. 1, 4–5 . . . (1958) ; *Standard Oil Co. of New Jersey* v. *United States*, 221 U.S. 1, . . . (1911). A line which limits standing to those against whom the antitrust violation is directed fulfills Congress' fundamental purpose and at the same time establishes a reasonable and easily identifiable cut-off that avoids the unfortunate consequences of opening the floodgate to all, no matter how remote their interest or incidental their relationship." The later case of *Long Island Lighting Co.* v. *Standard Oil Co. of*

*California,* 521 F.2d 1269 (2d Cir.), cites with approval the *Calderone Enterprises Corporation* case, supra, and its analysis of the policies favoring the target-area standing rule. It elucidates further (p. 1274) that "[u]nder the rule even parties whose injuries may be both immediate and foreseeable may lack standing to pursue a private remedy if that injury is indirect or incidental, or if their business was not in the target area of the allegedly illegal acts." Reference may also be made to *Jeffrey* v. *Southwestern Bell,* 518 F.2d 1129 (5th Cir.), as another decision dealing with the target-area standing rule.

In a case decided in the United States District Court for Connecticut, *Kemp Pontiac-Cadillac, Inc.* v. *Hartford Automobile Dealers' Assn.,* 380 F. Sup. 1382, 1386–87, (D. Conn.), it is emphasized that "[i]n order to claim treble damages the plaintiff must establish not only that he 'was within the target area of the illegal practices,' but further that he 'was not only hit, but was aimed at . . . .' *Karseal Corp.* v. *Richfield Oil Corp.,* 221 F.2d 358, 365 (9th Cir. 1955)."

This court must agree with the defendants' contentions-that since the plaintiff does not allege that he is a consumer availing himself of anesthesiology services, he cannot be deemed to be in the target area of the alleged price-fixing conspiracy. Whether patients who do in fact receive the anesthesiology services of the defendant, Anesthesia Associates of New Haven, or whether the public at large can assert those price-fixing claims, it is clear that the plaintiff, as a litigant trying to redress a public wrong without establishing a private injury, has no standing to do so under antitrust law. "Private litigants are not empowered to bring suit on behalf of the public in order to secure injunctive relief against allegedly unlawful practices harming the public

interest as a whole . . . ." *Burkhead* v. *Phillips Petroleum Co.,* 308 F. Sup. 120, 123 (N.D. Cal.). See *Bassett* v. *Desmond,* 140 Conn. 426, 430.

Reference should be made to the recent decision of the United States Supreme Court in *Goldfarb* v. *Virginia State Bar,* 421 U.S. 773, which held that a minimum fee schedule published by the Fairfax County Bar Association and enforced by the Virginia State Bar, as applied to real property title examinations, constituted anticompetitive conduct and was within the purview of the Sherman Anti-Trust Act. But it must be made clear that that decision is not factually in point, since the court noted (p. 785) that the fee-fixing schedules applicable to the real property title examinations in issue therein were inseparable from the interstate commerce aspects of real estate transactions. The court therefore concluded "that interstate commerce has been sufficiently affected." Ibid. Of great significance is the clarification made in the court's opinion that "there may be legal services that have no nexus with interstate commerce and thus are beyond the reach of the Sherman Act." Ibid.

The court has made reference to only a minuscule number of the multitude of decisions in the federal courts passing upon the myriad factual situations claimed to constitute violations of the Sherman Anti-Trust Act. In view of the lack of any guideline decisions in Connecticut, reliance must be made on the federal experience, particularly on the cases decided in the Second Circuit Court of Appeals. Based on the authority of the cases cited herein, this court is constrained to hold that the plaintiff's allegation set out in the ninth count of his complaint cannot under any reasonable interpretation afford him any valid basis for invoking the treble damage remedy provided by the Connecticut Anti-Trust Act. This court concludes that he does not have any "busi-

ness or property" which can be proximately injured "by reason of" or "by" any actions of the named defendants. And he is not within the target area of any possible antitrust violation under the provisions of chapter 624 as discussed hereinabove.

Accordingly, the defendants' demurrer is sustained.