ELIZABETH SADLOSKI ET AL. *v.* TOWN OF MANCHESTER ET AL.
(15166)

Peters, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued September 21—decision released December 26, 1995

*Kathleen Eldergill*, for the appellant (plaintiff Virginia Celinski).

*Bourke G. Spellacy*, with whom were *William J. Shea, Jennifer A. Osowiecki* and, on the brief, *Karen P. Blado*, for the appellees (defendants).

BORDEN, J. The dispositive issue in this appeal is whether the plaintiff has established taxpayer standing to challenge the validity of a real property tax abatement provision based solely on the existence of the abatement provision, irrespective of other tax consequences of the real estate development project to which the abatement provision relates. The plaintiff,[1] Virginia Celinski, appeals[2] from the judgment of the trial court in favor of the defendants, the town of Manchester (town), Homart Manchester Investment Company, and The Mall at Buckland Hills Partnership (partnership), in which it concluded that the plaintiff had failed to establish taxpayer standing. The plaintiff claims that the trial court improperly: (1) admitted into evidence portions of a certain deposition; and (2) determined that the plaintiff had not established taxpayer standing.[3] In addi-

---

[1] The original plaintiffs were Elizabeth Sadloski, Virginia Celinski, Harvey Steeves, Joyce R. Senkbeil and Adele Katkauskas, all of whom identified themselves as residents, voters and taxpayers of the town of Manchester. Prior to the first appeal to this court in this case, the trial court, *O'Neill, J.*, dismissed the actions as to all of the plaintiffs except Celinski for lack of standing, and none of the other plaintiffs appealed from that judgment of dismissal. *Sadloski* v. *Manchester*, 228 Conn. 79, 81 n.4, 634 A.2d 888 (1993). We refer herein to Celinski as the plaintiff. The plaintiff does not assert any basis for standing other than taxpayer standing.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[3] The plaintiff also claims that the trial court exceeded the scope of our remand in an earlier incarnation of this appeal; *Sadloski* v. *Manchester*, 228 Conn. 79, 634 A.2d 888 (1993); that precipitated the current appeal. Because we conclude that, upon that remand, the trial court properly concluded that the plaintiff had not established taxpayer standing, and because that determination was the focus of that remand, we need not address this additional claim.

tion, the plaintiff claims that the trial court, *O'Neill, J.,* improperly dismissed the action as to two of the original plaintiffs, Joyce R. Senkbeil and Adele Katkauskas. We affirm the substance of the judgment of the trial court, but modify it as to its form.

This is the second time that we have considered this case. See *Sadloski* v. *Manchester,* 228 Conn. 79, 634 A.2d 888 (1993). Both appeals arise out of a complaint filed in 1988, in which the plaintiff claimed that the town's tax assessment agreement with the partnership was invalid.[4] At trial, after the plaintiff had presented her evidence and rested, the defendants moved for a judgment of dismissal pursuant to Practice Book § 302,[5] claiming that the plaintiff had failed to make out a prima facie case.[6] The trial court, *Aurigemma, J.,* granted the motion, and rendered judgment dismissing the plaintiff's action for failure to make out a prima facie case. Assuming the plaintiff had established standing, the court held that she had failed to make out a prima facie case on the invalidity of the tax assessment agreement. *Sadloski* v. *Manchester,* supra, 82.

Only the plaintiff; see footnote 1; appealed from that judgment to the Appellate Court, and we transferred

[4] Specifically, the plaintiff alleged that the agreement: (1) violates chapter 203 of the General Statutes, particularly General Statutes § 12-65b, and exceeds the town's power to assess taxes under those provisions and under § 5-23 of the town charter; (2) violates the equal protection clause of the fourteenth amendment to the United States constitution; (3) is an expenditure of municipal funds for an improper purpose; (4) violates article first, § 1, of the Connecticut constitution; and (5) constitutes an abuse of discretion, power and the public trust.

[5] Practice Book § 302 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . ."

[6] The defendants claimed that: (1) the agreement did not violate § 12-65b; (2) the agreement did not violate the state or federal constitution; and (3) the plaintiff did not have standing to bring these claims.

the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 4023. Without reaching the merits of the plaintiff's appeal, we determined that "[t]he trial court in this case should not have considered the merits of the plaintiff's case without having first made a finding about whether she had standing and, consequently, whether the court had subject matter jurisdiction." *Sadloski* v. *Manchester*, supra, 228 Conn. 84. Because the record was insufficient to determine whether the plaintiff had proved standing to raise her claims, we remanded the case to the trial court for further proceedings to resolve that issue. Id., 85.

On remand, the defendants again moved for judgment, claiming that the plaintiff had not proven standing and, in the alternative, that even if the court found that the plaintiff had proven standing, she had failed to make out a prima facie case with regard to her substantive claims. The trial court concluded that the plaintiff had failed to establish her taxpayer standing because she had produced no evidence that her taxes would increase as a result of the agreement between the town and the partnership.[7] The court rendered judgment for the defendants, and this appeal followed.

The relevant facts are undisputed. The subject of the underlying action is an agreement between the town and the partnership entered into in February, 1988. The agreement concerns a 380 acre site, 115 acres of which, at the time of the agreement, were owned and to be developed by the partnership.[8] Under the agreement,

---

[7] The trial court also reasserted, by incorporation by reference, its earlier conclusion that the plaintiff had failed to make out a prima face case with regard to her substantive claims. The plaintiff challenges this conclusion as beyond the scope of the remand in *Sadloski* v. *Manchester*, supra, 228 Conn. 85. We need not, however, address this claim. See footnote 3.

[8] At the time of the agreement, the partnership planned to construct a shopping mall, namely the Pavilion at Buckland Hills, on sixty-four acres, and to complete additional commercial and other development on the remaining fifty-one acres. The mall and the other development have since been built.

the partnership was obligated to construct and install traffic, water and sewer improvements that would serve the entire site, at an estimated cost of $15 million. Additionally, the partnership agreed to dedicate to the town, in fee simple, any real property owned by the partnership upon or under which the improvements would be constructed or installed. Pursuant to the agreement, the assessment of the 115 acre parcel was fixed on the town tax list at $7 million for a period no longer than seven years.[9] Furthermore, the trial court found that, without the construction of the mall and the improvements on the 115 acre parcel, the tax assessment on that parcel was $309,650.

At trial, the plaintiff testified that she believed that her local taxes had increased as a result of the agreement. This opinion was based on her assumption that "when one large subsidized grant is allowed . . . the rest of the taxpayers will all have to pick up the portion that isn't being paid by them." She also presented Richard D. Pomp, a professor of tax law at the University of Connecticut School of Law, who testified that "if the agreement were declared invalid, all other things being equal, the town of Manchester would receive a maximum increase in property tax revenue of $9.5 million."

The trial court found, however, that the plaintiff had not proven that her taxes would increase as a result of the agreement. In this connection, the court also found that "the assessed value of the property in question before the execution of the Agreement was tens of millions of dollars less than that value after the execution of the Agreement."

---

[9] This fixed assessment provided a tax abatement to the partnership, from which the maximum benefit available was $9.5 million. If the partnership were to achieve this maximum benefit before the end of the seven year period, the fixed assessment would terminate.

## I

We first consider the plaintiff's claim that the trial court improperly granted the defendants' motion to dismiss as to Senkbeil and Katkauskas. The plaintiff claims that Senkbeil and Katkauskas have standing based on certain purported environmental impacts of the development in question. We decline to address this claim because the plaintiff has no standing to assert the rights of Senkbeil and Katkauskas, and they have never appealed the dismissal.[10]

It is clear from *Sadloski* v. *Manchester*, supra, 228 Conn. 81 n.4, that Senkbeil and Katkauskas did not appeal at that stage of the proceedings. It is also clear from the record in this appeal that Senkbeil and Katkauskas are not appellants. The plaintiff's appeal form names only herself as the plaintiff by whom the appeal is being filed. The plaintiff's docketing statement names only herself as the plaintiff-appellant, and describes Senkbeil and Katkauskas as former plaintiffs who may have a legal interest in the cause on appeal. Finally, the plaintiff's brief names only herself as the appellant.

Plaintiffs are not fungible, even if they are represented by the same attorney and have similar interests. The general rule is that one party has no standing to raise another's rights. See *State* v. *Williams*, 206 Conn. 203, 207, 536 A.2d 583 (1988); *Delio* v. *Earth Garden Florist, Inc.*, 28 Conn. App. 73, 78, 609 A.2d 1057 (1992). The plaintiff cannot assert the appellate rights of parties who have never done so themselves.

## II

The plaintiff next claims that the trial court improperly admitted into evidence a portion of the deposition

---

[10] The fact that Senkbeil and Katkauskas may have previously filed a notice of intent to appeal the dismissal, as the plaintiff suggests in her reply brief, does not change this analysis. A notice of intent to appeal is not an appeal.

of Boyce Spinelli, the director of finance for the town, which she claims was hearsay. We disagree.

After the plaintiff had presented her final witness, she offered into evidence portions of Spinelli's deposition pursuant to Practice Book § 248 (1) (c).[11] The court overruled the defendants' objection, and admitted the offered portion of the deposition into evidence. The court stated that, pursuant to Practice Book § 248 (1) (e),[12] the defendants could "put in those portions [of the deposition] necessary to present a fair picture of the testimony." In response, the defendants offered the complete deposition, which the court allowed "for the sake of speeding up the proceedings." The plaintiff objected to the entire deposition being admitted as a *plaintiff's* exhibit because she had not offered it. The court agreed, and marked it as a *defendants'* exhibit.

Section 248 (1) (e) is an expression of the general evidentiary principle that, within the discretion of the trial court, evidence must be put in its proper context to the extent necessary to remove any unfair prejudice, but beyond this, a party should not be compelled to include inadmissible or prejudicial evidence in her offer. See *Somers* v. *LeVasseur*, 230 Conn. 560, 565–66, 645 A.2d 993 (1994); *State* v. *Graham*, 200 Conn. 9, 13–14, 509 A.2d 493 (1986); *Sanderson* v. *Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 141, 491 A.2d 389 (1985); *State* v. *Glenn*, 194 Conn. 483, 498–99, 481 A.2d 741 (1984); *Glucksman* v. *Walters*, 38 Conn. App. 140,

[11] Practice Book § 248 (1) (c) provides: "The deposition of a party or of anyone who at the time of the taking of the deposition was an officer, director, or managing agent or employee or a person designated under Sec. 244 (g) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose."

[12] Practice Book § 248 (1) (e) provides: "If only part of a deposition is offered in evidence by a party, an adverse party may require the party to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts."

151–52, 659 A.2d 1217 (1995); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.2.3.

Thus, the issue is whether the balance of Spinelli's deposition comes fairly within this principle. In this connection, the plaintiff has failed to point to any particular portion of the exhibit that she claims went beyond the scope of this principle. As the appellant, the plaintiff has the burden of establishing an erroneous evidentiary ruling by the trial court. *Gateway Co.* v. *DiNoia,* 232 Conn. 223, 239, 654 A.2d 342 (1995); *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). The plaintiff asserts that the trial court improperly admitted into evidence the additional portion of Spinelli's deposition because it was hearsay, but she fails to address the actual basis for its admissibility. Thus, because she has failed to meet this burden, we have no reason to reject the trial court's ruling.

Even if the court's ruling were held improper, however, the plaintiff has failed to show any resulting harm. " 'It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him.' *State* v. *Vitale,* [supra, 197 Conn. 403]. Accordingly, we must determine whether [an] improper evidentiary ruling is likely to have affected the result of the trial. *State* v. *Brown,* 199 Conn. 14, 25, 505 A.2d 690 (1986)." *Gateway Co.* v. *DiNoia,* supra, 232 Conn. 239.

The plaintiff claims harm "[t]o the extent the trial court relied on this deposition testimony . . . in reaching its decision." As the defendants point out, the trial court did not rely on the Spinelli deposition in its decision dismissing the plaintiff's action for lack of standing.[13] In fact, the court's decision was based on an

[13] The evidence on which the trial court relied in its decision included testimony from the plaintiff and her expert, the terms of the agreement,

absence of evidence offered by the plaintiff, which belies the claim that an allegedly erroneous ruling in which additional evidence was admitted could somehow have harmed the plaintiff. Therefore, even if the court had ignored Practice Book § 248 (1) (e) and refused to admit the entire Spinelli deposition, it nevertheless would have ruled adversely to the plaintiff on the issue of standing.

## III

The final and dispositive issue on appeal is whether the trial court properly determined that the plaintiff had failed to prove injury necessary to establish her standing as a taxpayer. The plaintiff argues that she proved injury in the form of a loss in tax revenue to the town resulting from the tax abatement provided by the town to the partnership.[14]

Essentially, the plaintiff contends that the town's abatement of $9.5 million in tax revenue owed by the partnership is a pecuniary harm to the taxpayers because, by necessary implication, it must be compensated for by the rest of the taxpayers, including the plaintiff, in the form of a tax increase. We are not persuaded.

and the assessed value of the 115 acre parcel before and after the agreement, all of which would have been available even if the court had ruled in favor of the plaintiff on this evidentiary issue.

The only evidence on which the trial court relied that was not part of the plaintiff's case-in-chief was the difference in the assessed value of the 115 acre parcel before and after the agreement. This information, however, was contained in the affidavit of Robert B. Weiss, the general manager for the town, which was properly submitted by the defendants with their motion to dismiss pursuant to Practice Book § 143. Section 143 provides in relevant part: "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . [and] shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record. . . ."

[14] The plaintiff concedes that there is no evidence that the development project caused her taxes to increase.

"The plaintiff's status as a taxpayer does not automatically give her standing to challenge alleged improprieties in the conduct of the defendant town. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549, 427 A.2d 822 (1980); *Bell* v. *Planning & Zoning Commission*, 174 Conn. 493, 497–98, 391 A.2d 154 (1978); *Belford* v. *New Haven*, 170 Conn. 46, 52–53, 364 A.2d 194 (1975) . . . . The plaintiff must also allege and demonstrate that the allegedly improper municipal conduct cause[d her] to suffer some pecuniary or other great injury. . . . *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, supra [549]; *Belford* v. *New Haven*, supra, 53; *Atwood* v. *Regional School District No. 15*, 169 Conn. 613, 617, 363 A.2d 1038 (1975); *Bassett* v. *Desmond*, 140 Conn. 426, 430, 101 A.2d 294 (1953) . . . . It is not enough for the plaintiff to show that her tax dollars have contributed to the challenged project; *Bell* v. *Planning & Zoning Commission*, supra, 498 . . . the plaintiff must prove that the project has directly or indirectly increased her taxes; *Atwood* v. *Regional School District No. 15*, supra, 617; or, in some other fashion, caused her irreparable injury in her capacity as a taxpayer. *Bassett* v. *Desmond*, supra [430]; *Cassidy* v. *Waterbury*, 130 Conn. 237, 245, 33 A.2d 142 (1943)." (Citations omitted; internal quotation marks omitted.) *Sadloski* v. *Manchester*, supra, 228 Conn. 83.

The plaintiff's argument is based on the premise that, in evaluating her taxpayer standing claim, we must ignore the net economic consequences of the agreement and of the development of which it is an integral part, and focus only on the abatement clause. Relying on that underlying premise, the plaintiff presents a simple syllogism: (1) the tax abatement clause reduces the partnership's taxes vis-a-vis what its taxes would have been without the abatement clause; (2) therefore, the tax revenue to the town is less than what it would otherwise have been without the abatement clause; and

(3) therefore, the plaintiff's taxes must be higher than what they would otherwise have been without the abatement clause.

Neither our taxpayer standing cases nor common sense requires such tunnel vision. In the cases in which we have found standing on the basis of a taxpayer's claim that his taxes would increase, we have never endorsed such a bifurcation. The alleged injury to the taxpayer has generally been demonstrated by evidence that the municipality has either directly increased taxes or appropriated moneys from local funds. See, e.g., *Highgate Condominium Assn.* v. *Watertown Fire District*, 210 Conn. 6, 15, 553 A.2d 1126 (1989) (direct imposition of sewer service charges); *Atwood* v. *Regional School District No. 15*, supra, 169 Conn. 617 (appropriation of $2.5 million for purchase of land); *Higgins* v. *Ambrogio*, 19 Conn. App. 581, 583–84, 562 A.2d 1154 (1989) (appropriation of $22,468.80 to pay for police chief's accrued benefits). We have also permitted a taxpayer to establish standing by implication, however, when the municipality removed a property from the tax list without any offsetting increase, thereby necessarily decreasing tax revenue. *American-Republican, Inc.* v. *Waterbury*, 183 Conn. 523, 526–28, 441 A.2d 23 (1981).

Since standing is a practical concept; *Sadloski* v. *Manchester*, supra, 228 Conn. 84; common sense suggests that, when a particular agreement is part of an overall plan of development that will increase rather than decrease the economic benefits to the town with respect to a particular parcel, those increased benefits should be factored in as well. It is self-evident to us that a $9.5 million tax benefit to the partnership was an integral part of the development. To the extent that the plaintiff claims nonetheless that there was no evidence that the tax abatement clause was a precondition of the partnership's going forward with the development, she has the burden of proving this fact because a

plaintiff has the burden of proving standing. *American-Republican, Inc.* v. *Waterbury*, supra, 183 Conn. 526. We conclude, therefore, that in this case the relevant comparison for purposes of inferring probable taxpayer injury is between the net economic benefit to the town with the development project and the tax revenue of the town without the project.

The plaintiff contends that our holding in *American-Republican, Inc.* v. *Waterbury*, supra, 183 Conn. 523, is dispositive in her favor on the issue of standing. She claims that in *American-Republican, Inc.*, we created a per se rule that whenever a town provides a tax abatement, the taxpayers of that town have standing to challenge the abatement. We disagree.

In *American-Republican, Inc.*, taxpayers of Waterbury challenged the city's decision to purchase private land for the purpose of constructing public housing for the elderly. The trial court found that this action would result in a loss in tax revenue because it would remove the property from the tax list altogether, as well as excuse from payment three-quarters of the taxes owed by the prior private owner. Id., 527. Because there was no evidence that the negative effects on tax revenue would be offset by any corresponding tax increase, the trial court properly assumed that there would be a pecuniary harm to the taxpayers. We affirmed the judgment of the trial court and held that the taxpayers could prove standing based on the inference that a net loss in tax revenue would result in "[a] colorable claim of a pecuniary loss" to the taxpayers. Id., 527.

We did not, in *American-Republican, Inc.*, create a per se rule conferring standing on all taxpayers whenever a town provides a tax abatement. In that case, the trial court found that the city's actions would cause an actual loss of tax revenue. In light of that finding, we held that those taxpayers were entitled to the logical

inference that a net loss in their tax revenue would probably result in an increase in individual taxes. Id., 526–27.

The facts in this case, however, do not compel the same inference. In the present case, the trial court did not find that the agreement would result in a net loss of tax revenue. In fact, the record shows that the agreement will provide an overall net benefit to the town, even after a $9.5 million tax abatement, due to the construction of $15 million in improvements, as well as an increase in the assessment of land and buildings on the 115 acre parcel from $309,650 to $7 million.[15]

Finally, we address one matter that the parties have not addressed, namely, the form of the judgment. The trial court rendered judgment for the defendants. This form of judgment suggests a determination on the merits of the case. Because in the absence of standing the court lacks subject matter jurisdiction to determine the merits of the case, however, the correct form of judgment is to dismiss the action. The judgment must, therefore, be corrected as to form.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the action.

In this opinion the other justices concurred.

---

[15] Because in this case the economic benefit to the town as a result of the agreement consisted of both the $15 million in improvements and the increased taxes on the parcel, we need not decide whether such improvements or such increased taxes, alone, would suffice to undermine taxpayer standing to a landowner who challenges the validity of a tax abatement clause like the clause at issue in this case.