[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In an amended complaint dated February 2, 2001, the plaintiffs, James M. Rubino (Rubino) and Joseph Tarzia (Tarzia), brought this action requesting permanent injunctive relief against the defendants, Dannel P. Malloy, the Mayor of the city of Stamford, and Andrew J. McDonald (McDonald), Corporation Counsel of the city of Stamford, in their individual capacities.[1] The plaintiffs allege the following pertinent facts: the plaintiffs are taxpayers of the city of Stamford.[2] In April of 2000, a federal civil rights action, Katsaros v. Serafino
(Katsaros), was brought against Ralph Serafino and Jon T. Gallup, duly elected constables of the city of Stamford (the constables), for alleged tortious acts.[3] The constables were involved in a dispute between CT Page 8218 private parties and their alleged acts were not committed while they were acting as constables on behalf of the city of Stamford. The plaintiffs allege that the city of Stamford received an invoice for the constables' legal fees and McDonald indicated that the city of Stamford would pay a portion of these expenses and that the balance would be paid by the city's liability insurers. The plaintiffs claim that the defendants have no authority, pursuant to General Statutes § 7-101a, to pay for the constables' legal defense in Katsaros.
The plaintiffs allege that they would be irreparably harmed if the city of Stamford paid for any of the constables' legal fees as monies for the defense would come from the city's general fund and ultimately, the expense would result in a tax increase for the plaintiffs. The plaintiffs allege that these legal fees would not be recoverable. Furthermore, the plaintiffs allege that they would be irreparably harmed if the defendants submitted a claim to any liability insurer of the city of Stamford as the payment of those claims would also increase the plaintiffs' taxes. The plaintiffs allege that they have no adequate remedy at law and therefore, ask this court for injunctive relief Specifically, the plaintiffs request that this court enjoin the defendants from paying any of the constables' legal expenses out of the city of Stamford's funds and from submitting any claims to any liability insurer of the city of Stamford.
On September 6, 2000, the defendants moved to dismiss the plaintiffs' action on the ground that this court lacks subject matter jurisdiction. The defendants argue that the plaintiffs' action should be dismissed because; (1) the plaintiffs, as taxpayers, lack standing;[4] (2) the plaintiffs improperly seek judicial involvement in a purely political dispute; and (3) the abstention doctrine precludes this court from determining the merits of the plaintiffs' action because of the pendingKatsaros action. Both the plaintiffs and defendants have filed numerous memoranda in support of and in opposition to the defendants' motion to dismiss and the plaintiffs' request for injunctive relief. The court's decision will address, therefore, the merits of the defendants' motion as well as the plaintiffs' request.
First, the court will address the defendants' motion to dismiss. A motion to dismiss is the proper method by which to contest subject matter jurisdiction. Practice Book § 10-31(a)(1). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531,544, 590 A.2d 914 (1991). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) Barde v. Board ofCT Page 8219Trustees, 207 Conn. 59, 62, 593 A.2d 1000 (1988); see also HospitalitySystems, Inc. v. Oriental World Trading Co. Ltd., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 169927 (February 1, 2000, Karazin, J.).
The defendants argue that the plaintiffs' action should be dismissed because the plaintiffs lack standing as taxpayers. Both the plaintiffs and the defendants cite the seminal case of Bassett v. Desmond,140 Conn. 426, 101 A.2d 294 (1953), in arguing whether the plaintiffs have taxpayer standing in the present case. Bassett "readily divides itself into two parts of which the first deals with [a] parking meter contract." Id., 428. In the first part of Bassett, which the defendants in this case rely upon, the plaintiff brought an action as a taxpayer seeking to block the city of Milford from performing a contract to purchase parking meters from a private company. Under the contract, the cost of the meters was to be paid out of the proceeds of the parking meters. Id., 428-29. The court found that the plaintiff lacked standing to bring the action stating that: "[T]he plaintiff relying as he was upon his status as a taxpayer of the town, was obligated to prove some pecuniary or other great injury to himself. It was not enough that he could qualify as a taxpayer. He had to go further. He had to establish that the alleged contract would if carried out . . . result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury." Id., 430.
The plaintiffs in this case mainly rely upon the other part ofBassett. "The other part of the [Bassett v. Desmond] case deals with [a] contract for painting the town hall." Bassett v. Desmond, supra, 431-32. The Milford budget had included an item of $1,250 for renovating the town hall. Bids were requested for painting the town hall, the lowest of which was $3,500. With the prior approval of the town's finance committee, the town council approved a budgetary transfer of $3,500 and authorized the acceptance of the bid. Id., 432. The court stated that "[t]he foregoing recital discloses a problem other than that presented by the meter contract. The situation with respect to the painting contract is different, since the contractor was concededly paid from the town general funds, that is, from revenue derived in part from the plaintiff's taxes. The plaintiff had standing before the court, then, if he proved that the payment for the painting job was illegal, since it directly affected him in a pecuniary manner. Nor was his standing lowered in any degree because the pecuniary effect upon him was extremely small." Id.
The holding in the "painting contract" part of Bassett, however, appears to have been abandoned by the case law which follows Bassett. Specifically, the "painting contract" holding, finding taxpayer standing, is inconsistent with the test used to determine such standing in CT Page 8220 subsequent Supreme Court decisions purportedly following Bassett. These decisions rely upon the "parking meter" holding in Bassett. See Sadloskiv. Manchester, 235 Conn. 637, 647, 668 A.2d 1314 (1995) ("It is not enough for the plaintiff to show that [his] tax dollars have contributed to the challenged [conduct] . . . the plaintiff must prove that the [conduct] has directly or indirectly increased [his] taxes . . . or, in some other fashion, caused [him] irreparable injury in [his] capacity as a taxpayer."); Highgate Condominium Assn. v. Watertown Fire District,210 Conn. 6, 15, 553 A.2d 1126 (1989) (taxpayer standing requires "two conditions for the maintenance of actions seeking to challenge municipal conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer some pecuniary or other great injury."); American-Republican, Inc. v. Waterbury,183 Conn. 523, 526, 441 A.2d 23 (1981) ("A plaintiff who relies upon such a [taxpayer] status in bringing an action to question some alleged illegal activity on the part of municipal officials must also prove that the transaction involved will probably result, directly or indirectly, in an increase in his taxes or would, in some other fashion, cause him irreparable injury."); Alarm Applications Co. v. Simsbury Volunteer FireCo., 179 Conn. 541, 549, 427 A.2d 822 (1980) ("[t]here must be more alleged than the mere use by a municipality of tax revenues for an improper purpose in order to confer standing upon a taxpayer who seeks to challenge such action.").[5]
In fact, Supreme Court decisions following Bassett that cite any part of the "painting contract" holding do so for the following limited proposition: so long as the plaintiff seeks relief for some direct injury, the alleged injury need not be great. See Gay Lesbian LawStudents v. Board of Trustees, 236 Conn. 453, 464, 673 A.2d 484 (1996);Connecticut Assn. of Health Care Facilities v. Worell 199 Conn. 609,613, 508 A.2d 743 (1986); Maloney v. Pac, 183 Conn. 313, 321, 439 A.2d 349
(1981). Therefore, because the majority of Supreme Court decisions afterBassett utilize the taxpayer standing test found in the "parking meter" holding, this court finds that the application of the "painting contract" holding urged by the plaintiffs cannot support their claim of standing. Accord Garrett v. City of Bridgeport, Superior Court, judicial district of Fairfield at Fairfield, Docket No. 321664 (March 27, 1995, Levin, J.) (14 Conn.L.Rptr. 430). Consequently, this court will apply the standard set forth in the "parking meter" holding of Bassett, requiring allegations and proof of I irreparable injury or an increase in taxes, when examining whether the plaintiffs have standing as taxpayers in this case.
In moving to dismiss the plaintiffs' action, the defendants argue that the plaintiffs fail to demonstrate that their taxes will increase or that CT Page 8221 they will suffer some other irreparable harm as a result of the defendants' actions. The defendants note that in the 2000-2001 budget for the city of Stamford, there is a line item entitled "Professional Consultant" in the initial amount of $114,000, allocated in part for the retention and payment of outside legal counsel. (Hearing Transcript (Transcript) (10/16/00), pp. 122-23; Transcript (2/2/01), pp. 31-32.) The defendants point to the testimony at the court hearing[6] of defendant McDonald who stated that to date the city of Stamford has paid only $2,300 of an $8,300 invoice for the constables' legal fees and that approximately $6,000 of that amount was paid by the city's insurance carrier. (Transcript (2/6/01), p. 120.) Furthermore, the defendants cite to the testimony of plaintiff Tarzia, qualified as an expert in municipal finance, who testified at the hearing. The defendants point to the fact that when Tarzia was asked how much money his taxes would increase as a result of the Katsaros action, Tarzia testified that he would do so "when I see the final bill."[7] (Transcript (2/2/01), p. 36.) Moreover, when Tarzia was asked if he had a best guess for how much his taxes would increase, Tarzia responded "No one does." (Transcript (2/2/01), p. 36.) Consequently, the defendants argue that it is pure speculation on the part of the plaintiffs that the legal fees from the Katsaros action will exceed the initial budgetary allotment of $114,000 and lead to an increase in the plaintiffs' taxes. The defendants conclude, therefore, that the plaintiffs' action must be dismissed for lack of standing as the plaintiffs have failed to prove irreparable injury or an increase in taxes.
The plaintiffs respond that the mill rate, which determines the amount of a taxpayer's tax liability, changes with every $106,000 in spending or savings within the city of Stamford's operating budget. (Transcript (10/16/00), p. 116.) The plaintiffs point to the testimony of Tarzia who stated that the budget for "Professional Consultants" was increased to $133,000 and that McDonald requested an additional $70,000 to $80,000 during February of 2001. (Transcript (2/2/01), p. 32.) Furthermore, the plaintiffs note that Tarzia testified that the contingency fund for the fiscal year 2000-2001 was funded at $1,600,000 and that approximately $800,000 of that fund was spent as of February 2, 2001. (Transcript (2/2/01), p. 38.) The plaintiffs conclude, therefore, that these expenditures, when added to the present legal fees of $8,300 for the constables' defense, exceed the $106,000 amount needed to move the mill rate and ultimately, increase the plaintiffs' taxes.
As this court has already discussed in detail, "a plaintiff's status as a taxpayer does not automatically give [him] standing to challenge alleged improprieties in the conduct of [a] defendant [municipality].Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,549, 427 A.2d 822 (1980). . . . The plaintiff must also allege and CT Page 8222 demonstrate that the allegedly improper municipal conduct [caused him] to suffer some pecuniary or other great injury. . . . Alarm ApplicationsCo. v. Simsbury Volunteer Fire Co., supra, [179 Conn. 549] . . . Bassettv. Desmond, 140 Conn. 426, 430, 101 A.2d 294 (1953). . . . It is not enough for the plaintiff to show that [his] tax dollars have contributed to the challenged [conduct] . . . the plaintiff must prove that the [conduct] has directly or indirectly increased [his] taxes . . . or, in some other fashion, caused [him] irreparable injury in [his] capacity as a taxpayer. Bassett v. Desmond, supra, [140 Conn. 430]." "(Citations omitted; internal quotation marks omitted.) Sadloski v. Manchester,235 Conn. 637, 647, 668 A.2d 1314 (1995). "If a party is found to lack standing, the court is without subject matter "jurisdiction to determine the cause." (Internal quotation marks omitted.) Ramos v. Town of Vernon,254 Conn. 799, 808, 761 A.2d 705 (2000).
The court is unpersuaded by the plaintiffs' argument. The court finds that the plaintiffs have not provided the court with conclusive evidence that the plaintiffs' taxes will increase or that they will be irreparably harmed as a result of the defendants actions. While plaintiff Tarzia testified that additional monies for the "Professional Consultants" budget was added, he also testified that the money was set aside for a number of different cases and did not recall seeing the Katsaros case as one of them. (Transcript (2/2/01), p. 32.) Furthermore, Tarzia testified that if the $106,000 was not spent, or if the $106,000 was spent but the city of Stamford was operating with a surplus, that his taxes might not go up at all. (Transcript (2/2/01), p. 61.) Moreover, the court finds unpersuasive Tarzia's testimony that there need not be $106,000 spent on the Katsaros action alone in order to increase the mill rate, but rather that additional expenditures, including those in Katsaros, which in total reach $106,000 in additional spending, cause the mill rate to increase and ultimately, the plaintiffs' taxes to increase. (Transcript (2/2/01), p. 53.) Under this theory then, if other matters with greater expenditures than Katsaros are allocated from the same budget and consequently, when totaled increase the mill rate, then the Katsaros expenditures, no matter how small, may be considered responsible for the increase in the mill rate and the plaintiffs' taxes. The plaintiffs must show that the defendants' allegedly improper conduct caused them to suffer irreparable harm or an increase in taxes. See Sadlowski v. Manchester, supra,235 Conn. 647. In the present case, the plaintiffs allege that the defendants are improperly paying for the constables' legal defense in theKatsaros action. The record reflects that only $8,300 has been spent on the constables' defense to date. (Transcript (2/6/01), p. 120.) The court finds that the plaintiffs are unable to show that an additional $97,700 has allegedly been spent improperly on the Katsaros action, thereby bringing the total amount spent to $106,000, and thus, demonstrating that the Katsaros expenditures alone increased the mill rate and the CT Page 8223 plaintiffs' taxes. Consequently, the court finds that it is mere speculation on the part of the plaintiffs as to whether their taxes will increase as a result of the defendants paying for the constables' legal fees incurred in Katsaros. The court finds, therefore, that the plaintiffs have not met their burden of proving taxpayer standing in this action as the plaintiffs have not demonstrated that they will suffer irreparable harm or an increase in taxes. See Enama v. Weicker, Superior Court, judicial district of Ansonia/Milford at Derby, Docket No. 046563 (June 13, 1994, Mancini, S.T.R.) (court granted state official defendants' motion to dismiss in part because taxpayer plaintiff could not meet threshold requirement of taxpayer standing because plaintiff could not show "colorable claim of injury.").
Even if this court found the plaintiffs to have taxpayer standing in this action, however, this court would still have denied the plaintiffs' request for injunctive relief The plaintiffs allege in their amended complaint that they will be irreparably harmed and will have no adequate remedy at law if their request for permanent injunctive relief is not granted. (Amended complaint, ¶¶ 13, 14, 15.) In their prayer for relief the plaintiff's request that the court enjoin the defendants from paying any of the constables' legal expenses out of the city of Stamford's funds and from submitting any claims to any liability insurer of the city of Stamford. The plaintiffs argue that constables are not considered municipal officers pursuant to General Statutes § 7-101a[8] and therefore, the defendants are not authorized to indemnify the constables for their legal expenses in the Katsaros action. The plaintiffs assert that under General Statutes § 7-101a, the phrase "any municipal officer, whether elected or appointed" is followed by an extensive and specific list of the individuals and entities entitled to indemnification and that constables are not among them. The plaintiffs argue that as the statutory language of General Statutes § 7-101a is clear and unambiguous on its face there is no need to inquire as to the legislative intent behind the statute. Furthermore, the plaintiffs contend that General Statutes § 7-101a, which abrogates common law immunity, must be strictly construed. See Ahern v. New Haven, 190 Conn. 77, 82,459 A.2d 118 (1983).
The defendants respond that elected constables, like the constables in the Katsaros case, are defined as officers pursuant to General Statutes § 9-185.[9] Moreover, the defendants point to a joint opinion issued by the Connecticut Attorney General's office which found that "constables are municipal officers." (Defendants' memorandum (2/2/01), Exh. D.) Furthermore, the defendants contend that the language of General Statutes § 7-101a creates some ambiguity as to whether all municipal officers are indemnified under the statute and therefore, the legislative history of the statute must be examined. The defendants argue that the CT Page 8224 statute's legislative history demonstrates that constables were intended to be considered municipal officers entitled to indemnification under the statute. Specifically, the defendants point to numerous comments of supporters of the 1977 amendments to General Statutes § 7-101a. Representative Kevin P. Johnston, a sponsor of the amendments, stated that the amended legislation "would include municipal employees as well as the appointed and elected officials under the protections offered under Section 7-101a of the General Statutes. The second part of the amendment would require towns to protect and save harmless any municipalofficer or employee from financial loss or expense including legal fees and costs . . . (Emphasis added.) (Defendants' memorandum (2/2/01), Exh. E.) Furthermore, the defendants contend that the comments of Senator Baker show that the 1977 amendment was designed to "requiremunicipalities to assume liability for acts committed in the discharge of their duties by elected and appointed officers who are not members of theboards, committees, councils or commissions." (Emphasis added.) (Defendants' memorandum (2/2/01), Exh. E.) Consequently, the defendants contend that they are required under the statute to indemnify the constables in the Katsaros action.
Moreover, the defendants argue that General Statutes § 7-101a
(b)[10] provides that if the constables are found inKatsaros to have acted in a willful, wanton or malicious manner, then the constables are required to reimburse the defendants for their legal fees. The defendants argue, therefore, that the plaintiffs will not be irreparably harmed by the defendants' actions and have an adequate remedy at law. As a result, the defendants conclude that the plaintiffs' request for permanent injunctive relief should be denied.
"[A] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Emphasis omitted; internal quotation marks omitted.) Johnson v. StatewideGrievance Committee, 248 Conn. 87, 107, 726 A.2d 1154 (1999). "A prayer for injunctive relief is addressed to the sound discretion of the [trial] court . . ." (Internal quotation marks omitted.) Granger v. A. Aiudi Sons, 60 Conn. App. 36, 44, 758 A.2d 417 (2000). "In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction. . . . The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier." (Internal quotation marks omitted.) Tomasso Bros., Inc. v. OctoberTwenty-Four, Inc., 230 Conn. 641, 648, 646 A.2d 133 (1994).
The court finds that the plaintiffs have not met their burden of proving irreparable harm and lack of an adequate remedy at law. The court CT Page 8225 finds that the language of General Statutes § 7-101a is unclear as to whether all municipal officers are indemnified under the statute. "Statutory interpretation is a matter of law . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Quigley-Dodd v. GeneralAccident Ins. Co. of America, 256 Conn. 225, 232, ___ A.2d ___ (2001). Consequently, the court looks to the legislative intent behind the statute. In this case, the legislative history of General Statutes §7-101a, as well as the rest of the record evidence, demonstrates that constables were intended to be considered municipal officers under the statute. See General Statutes § 9-185; Defendants' memorandum (2/2/01), Exh. D, E. Based on this conclusive evidence, the court finds that all municipal officers, including constables, are included under General Statutes § 7-101a and therefore, the defendants were required to indemnify the constables in the Katsaros action.
Furthermore, the court finds that the plaintiffs' reliance on Ahern v.New Haven supra, 190 Conn. 77, is misplaced since that case involved the retroactive applicability of General Statutes § 7-101a. Moreover, the court in Ahern stated that "[i]n 1977, [General Statutes § 7-101a] was amended further by extending coverage to include any full-timemunicipal employee." (Emphasis added; internal quotation marks omitted.) Id., 80. The court finds, therefore, that the plaintiffs will not be irreparably harmed by the defendants' indemnification of the constables as General Statutes § 7-101a authorizes such action. Moreover the plaintiffs do have an adequate remedy at law pursuant to General Statutes § 7-101a (b) as the constables will be required to reimburse the city of Stamford for their legal fees if they are found to have committed malicious, wanton or willful behavior in Katsaros.
In conclusion, the plaintiff's lack taxpayer standing in this action. Accordingly, this court lacks subject matter jurisdiction over this case and the defendants' motion to dismiss is hereby granted. Furthermore, even if the plaintiffs were found to have taxpayer standing in this case, the court finds that the plaintiffs have not met their burden of proving irreparable harm and lack of an adequate remedy at law in order to enjoin the defendants. Consequently, the court denies the plaintiffs' request for injunctive relief
MINTZ, J. CT Page 8226