[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION TO DISMISS THEDEFENDANTS' COUNTERCLAIM
On July 2, 1996, the Mohegan Tribe of Indians of Connecticut (hereinafter the "plaintiff") filed a verified complaint in three CT Page 2325 counts against the Mohegan Tribe and Nation, Inc., Confederation of the Mohegan-Pequot American Indian Nation and Affiliated Tribes, Inc., Moigu Standing Bear F/K/A Randolph Tyler Johnson, Kenneth H. Watrous, Sr., Christy Johnson, Eleanor C. Fortin, William V. Sears, Jr., Lawrence J. Fowler, Sr., and Dale Fowler. Count one alleges Common Law Trade Name Infringement. Count two alleges a violation of the Lanham Act (15 U.S.C. § 1125). Count three alleges a violation of the Connecticut Unfair Trade Practices Act (§§ 42-110a et seq.).[1]
On August 6, 1996, the Mohegan Tribe and Nation, Inc., Confederation of the Mohegan-Pequot American Nation and Affiliated Tribes, Inc.,[2] Moigu Standing Bear, Kenneth H. Watrous, Sr., Christy Johnson, and William Sears, Jr. (hereinafter the "defendants") filed an answer and asserted a counterclaim against the plaintiff. In the counterclaim, the defendants allege abuse of tribal procedures in procuring federal recognition for the Mohegan tribe and seek relief from this court in the nature of 1) a temporary or permanent injunction of any activities or endeavors by the plaintiffs in recognition of the federal recognition until "a final determination made [sic] as to the true leader of the Mohegan Indian Tribe," 2) "an order directing the plaintiff to formerly [sic] recognize Moigu Standing Bear as the true and lawful leader of the Mohegan Indian Tribe;" 3) "an order directing the plaintiff to include all eligible Mohegan Indians and Native Americans under the Federal and State recognition determinations so that said Mohegan Indians and Native Americans could share in the fruits of the activities now being conducted in an unlawful and exclusionary manner by the plaintiff;" and 4) an order directing the plaintiff to cease all operation and activities until there is a final determination made with regard to tribal leadership, membership and the true lawful and legal effect and applicability of the federal recognition, the State recognition and the tribal sovereignty referred to in the plaintiff's Complaint."
On September 5, 1996, the plaintiff filed a motion to dismiss (#105) the defendants' counterclaim on the ground that the court lacked subject matter jurisdiction to hear the counterclaim. On October 16, 1996, the defendants filed a memorandum in opposition to the plaintiff's motion to dismiss. On November 22, 1996, the plaintiff filed a reply to the defendants memorandum of law in opposition to the plaintiff's motion to dismiss the defendants' counterclaim. CT Page 2326
Motion to Dismiss, Generally
"A motion to dismiss . . . properly attacks the jurisdiction of the court. . . ." Garlic v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "The motion to dismiss shall also be used to assert . . . lack of jurisdiction over the subject matter. . . ." (Internal quotation marks omitted.) Sadloski v. Town ofManchester, 235 Conn. 637, 645 n. 13, 668 A.2d 1314 (1995). "In deciding a motion to dismiss [the trial court] must consider the allegations of the complaint in their most favorable light. (Internal quotation marks omitted.) Savage v. Aronson,214 Conn. 256, 264, 571 A.2d 696 (1990). However, "[a] ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . [Rather,] [m]otions to dismiss are granted solely on jurisdictional ground[s]." (Citations omitted.) DiscoverLeasing, Inc. v. Murphy, 33 Conn. App. 303, 306-07, 635 A.2d 843
(1993).
Discussion
The plaintiff asserts that this court lacks subject matter jurisdiction to hear the defendants' counterclaim on the grounds of sovereign immunity and federal preemption. On the other hand the defendants argue that, by instituting the present suit, the plaintiffs have waived their right to sovereign immunity in this case. This court concludes that the counterclaim should be dismissed.
In Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978), the United States Supreme Court outlined the relationship between the federal government and Indian tribes: "Indian tribes are `distinct, independent political communities, retaining their original natural rights' in matters of local self-government. . . . Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations. . . . They have power to make their own substantive law in internal matters. . . . and to enforce that law in their own forums. . . . "[h]owever[,] . . . Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess. (Citations omitted; Internal quotations omitted.) Id. 55-56.
Our Connecticut Supreme Court has stated that "[t]he present CT Page 2327 right of tribes to govern their members and territories flows from a preexisting sovereignty limited, but not abolished, by their inclusion within the territorial bounds of the United States. Tribal powers of self government . . . are observed and protected . . . to insure continued viability of Indian self-government insofar as governing powers have not been limited or extinguished. . . . The exercise of tribal governing power may itself preempt state law in areas where, absent tribal legislation, state law might otherwise apply. . . . Thus, in order for a state enactment to impinge on tribal sovereignty, or in order for an Indian tribe to assert that it is not subject to civil jurisdiction that otherwise applies to state citizens, there must be a tribe that exists as a distinct cultural or ethnic group. Additionally, the tribe must have a form of demonstrable sovereignty or functioning self-government. Further, the state act in question must actually infringe on some exercise of tribal government or existing tribal legislation."Schaghticoke Indians of Kent, Conn., Inc. v. Potter,217 Conn. 612, 628-29, 587 A.2d 139 (1991).
Specifically with regard to the State court's jurisdiction over Indian matters, the Court has explained that [l]ike all instrumentalities of the state of Connecticut, our courts are powerless to intervene in the exercise of tribal self-government. Federal statute, federal common law and state statute all require us to treat bona fide Indian tribes as sovereign nations and to protect tribal rights to self-determination. . . . Because of the continuing inherent sovereignty of Indian tribes, for example, federal common law forbids states from `unlawfully infringing on the right of reservation Indians to make their own laws and be ruled by them.'" Golden Hill Paugussett Tribe of Indians v.Southbury, 231 Conn. 563, 574-75, 651 A.2d 1246 (1995), quotingWhite Mountain Apache Tribe v. Bracker, 448 U.S. 136, 142 (1980).
In this court's judgment, the defendants' counterclaim asks this court to leapfrog over the preemptive barrier of federal law and dive into the torrent of internal tribal self-government, neither of which it is willing, nor able, to do. While the legal theory underlying the defendants' counterclaim is unclear, what is clear is that this court is unable to provide the kind of equitable relief requested in the defendants' counterclaim as it would be a direct interference with tribal self-government which is expressly preempted by federal authority over the Indians as quasi-sovereign nations. See Three Affiliated Tribes v. WoldEngineering, 476 U.S. 877, 893 (1986) ("[A] state may not act in CT Page 2328 a manner that `infringe[s] on the right of reservation Indians to make their own laws and be ruled by them."); Iowa Mutual Ins. Co.v. LaPlante, 480 U.S. 9, 14 (1987) ("[w]e have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government. . . . to the extent that "sovereignty has not been withdrawn by federal statute or treaty. The federal policy favoring tribal self-government operates even in areas where state control has not been affirmatively pre-empted by federal statute."); Cotton Petroleum Corp. v. NewMexico, 490 U.S. 163, 204 (1989) ("[e]xercise of state authority may be impermissible solely on the ground that the state intervention would interfere with `the right of reservation Indians to make their own laws and be ruled by them.'"); Montanav. United States, 450 U.S. 544, 564 ("Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members."); Williams v. Lee, 358 U.S. 217, 220
(1959) ("Congress has also acted consistently upon the assumption that the States have no power to regulate the affairs of Indians on a reservation.")
In Golden Hill Paugussett Tribe of Indians v. Southbury,
supra, the Connecticut Supreme Court held that a trial court had jurisdiction over internal tribal matters only insofar as it was necessary to determine the trial court's jurisdiction. In that case, the tribal council of the Golden Hill Paugussett tribe moved to dismiss the underlying action on the ground that the plaintiff (a member of the Golden Hill Paugussett tribe) did not have standing to bring suit on behalf of the tribe. Id. 581-82. After an evidentiary hearing, the trial court determined that "the Council, and not [the plaintiff], has control of the group calling themselves members of the tribe and that the council wishes the case withdrawn. (Internal quotation marks omitted.) Id. 568. On appeal, the plaintiff argued, inter alia, that the trial court had no jurisdiction to determine whether the plaintiff actually had standing to sue in the name of the tribe as that question was a matter of tribal sovereignty not cognizable in civil court. Id. 569.
In affirming the trial courts dismissal, the Court determined that a trial court's jurisdiction to determine jurisdiction is not incompatible with tribal sovereignty. The Court stated that "[o]ur recognition of tribal sovereignty does not, however, render all matters touching upon tribal decisions nonjusticiable. As the United States Supreme Court has made clear, tribal CT Page 2329 sovereignty does not impede state court jurisdiction unless `the exercise of state-court jurisdiction in [the] case would interfere with the right of tribal Indians to govern themselves under their own laws. . . .'" Id. 575 76, quoting ThreeAffiliated Tribes of the Fort Berthold Reservation v. WoldEngineering, 467 U.S. 138, 148 (1984).
Unlike the parties in Southbury, the defendants' counterclaim explicitly invites this court to assume jurisdiction over what is clearly an internal tribal matter.[3] The plaintiffs are formally recognized as an Indian tribe having government-to-government relations with the federal government.[4]59 Fed. Reg. 12140; as modified by 59 Fed. Reg. 37144. The state of Connecticut has also recognized that the Mohegan tribe is a "self-governing entit[y] possessing powers and duties over tribal members and reservations. Such powers and duties included the power to: (1) Determine tribal membership and residency on reservation land; (2) determine the tribal form of government; (3) regulate trade and commerce on the reservation; (4) make contracts, and (5) determine tribal leadership in accordance with tribal practice and usage." General Statutes § 47-59a(b). Notwithstanding General Statutes § 47-65b, conceding criminal and limited civil regulatory jurisdiction to the state of Connecticut, the Mohegan tribe remains sovereign in all areas affecting tribal self-government. See General Statutes § 47-65b.
The court grants the plaintiff's motion to dismiss the defendants' counterclaim on the ground that this court lacks subject matter jurisdiction to determine matters affecting tribal self-government.