[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision Re: Motion to Dismiss
Plaintiffs bring this action in three counts seeking injunctions and a declaratory judgment by verified complaint. The first and second counts allege violations of § 5-22 of the municipal charter of the Town of Manchester (Manchester). The third count alleges a violation of C.G.S. § 10-287b.
This court issued a stay in this matter on March 6, 1997.
Defendants move to dismiss alleging that plaintiffs lack standing to bring this action. More specifically, the defendants charge that plaintiffs have not alleged nor can they prove any pecuniary harm.
In answer to these claims plaintiffs say they have suffered pecuniary harm and that the defendants' actions are in violation of state and local law.
The plaintiffs, inter alia, have alleged the following facts in their complaint:
Elizabeth V. Sadloski (Sadloski), is a resident, property owner and taxpayer of Manchester. CT Page 4840
Manchester Property Owners Association (MPOA) is a group of about four-hundred members who are taxpayers and property owners residing in Manchester. Sadloski is the President of that association.
Manchester is a municipal corporation.
Manchester Board of Education (BOE), is a separate body politic organized under the laws of the State of Connecticut.
Plaintiffs have standing to challenge the manner in which Manchester contracts with vendors doing business with the BOE. Manchester or BOE is about to (or already has) enter into a contract with a private vendor, Honeywell, Inc. (Honeywell), which contract violates Manchester Municipal Charter Provision § 5-22 and is not the least expensive. Accordingly, Sadloski, as a taxpayer will suffer a pecuniary loss if the Manchester and/or the BOE awards the contract to Honeywell. This pecuniary loss will result in either a direct or indirect increase in Sadloski's taxes.
Sadloski, will suffer irreparable harm because Manchester has not satisfied the requirements of competitive bidding statute thus stripping Sadloski of the benefits of that statute; namely a guarantee that Manchester has acquired on her behalf the best product and service for its money.
Honeywell conducts business in the State of Connecticut.
In or about December of 1995 Manchester, acting through the BOE, issued a request for proposals (RFP) for an energy performance contract. The RFP called for vendors to submit bids for a "Performance Based Energy/Conservation Program" (the "Project"). The RFP related to fourteen different buildings within Manchester under the control and ownership of the BOE.
The BOE did not issue any "plans and specifications" with the RFP but merely listed eight project goals and left it to each of the vendors to "demonstrate how they will implement and achieve [those] project goals."
It appears that the RFP was not advertised in any newspaper or trade journal. Rather, certain companies including Honeywell, a defendant in this action, were allegedly notified by the BOE's Business Manager, Richard Borden (Borden) of the RFP. CT Page 4841
The RFP allowed prospective vendors only twenty calendar days over the Christmas and New Year Holidays to prepare their respective proposals. Borden, agreed to extend the due date for Proposals to January 31, 1996. Even with this extended date Borden acknowledged that he felt it would still be very onerous, if not impossible, for vendors to perform the engineering required for them to submit Proposals.
Only two vendors other than Honeywell submitted proposals.
The proposals were delivered to Borden's office. On January 31, 1996, the date scheduled for the opening of the Proposals, Borden was absent.
Barber-Colman Cosentino, Inc. (BCC), HEC Corporation (HEC) and Honeywell singular as the "Barber-Colman Proposal," the "HEC Proposal" and the "Honeywell Proposal" (collectively referred to it as the "Proposals").
The Honeywell Proposal was for a total cost to the BOE of $4,309,500.84 financed over a ten year term. The HEC Proposal called for a total contract amount of $1,719,570.00 and the BCC Proposal called for a total contract amount of $1,204,200.00.
After privately opening the Proposals, (the BOE refused to disclose the substance of the Proposals in public even though the RFP required the BOE to "publicly open all eligible Proposals received at the Proposal Opening"), the BOE formed a committee for purposes of evaluating the Proposals (the "Evaluation Committee"). Among those on the Evaluation Committee were several BOE employees, including Borden and Francis Netherwood (Netherwood). The Evaluation Committee sought the advice of an engineering firm to assist it in evaluating the Proposals. For that purpose Steven Durkey, an engineer employed by Design Associates, Inc. (the "Engineer"), was retained by Manchester. He prepared an evaluation of the Proposals for the purpose of assisting the Evaluation Committee in making its recommendation to the BOE.
The Engineer remains uncertain whether the Honeywell Proposal, which is the most costly to the Town, provides Manchester and the BOE more product and service than the HEC Proposal and the BCC Proposal. The Engineer said in his report that: CT Page 4842
 The Honeywell bid is higher than the other two companies' proposals. According to their documents [Honeywell], it appears that they propose to do more work than the other companies indicate. Whether or not the additional work makes it commiserate [sic] with the others is difficult to determine without further investigation.
Despite the fact that the Honeywell proposal far exceeds, in price, the BCC and HEC Proposals and despite the fact that the Engineer was not fully satisfied that Honeywell was, in fact, rendering more product and service than the other Proposals, the Evaluation Committee, which included Netherwood and Borden, recommended that the Honeywell Proposal be accepted by the BOE.
On February 4, 1997 the BOE, on the advice of the Evaluation Committee, voted to award the contract to Honeywell. Some members of the BOE did not vote in favor of the Honeywell Proposal because they felt the RFP process violated the requirements of competitive bidding set forth in Manchester Municipal Charter § 5-22.
Manchester, acting through its Board of Directors, likewise voted on February 4, 1997 to approve the appropriation necessary for the Project's contract to be awarded Honeywell. Some Directors voted against awarding the contract to Honeywell because they too believed that the requirements of competitive bidding were violated and that Honeywell was afforded preferential treatment in the RFP process.
Well before the RFP was issued, Honeywell, was given an unfair advantage over any of the other vendors who might have submitted bids including those vendors that did. Specifically, the Director of Buildings for the Board of Education, Netherwood, acknowledged that Honeywell was provided access to the buildings well before the RFP was published. In response to certain questions propounded by Clifton Thompson, member of the Board of Directors, Netherwood responded:
 Honeywell was brought to my attention by Mr. Borden in 1995 when he set up a meeting in his office and he told me to assist them [Honeywell] helping them to gain access to areas in building blueprints, etc. which we have done.
Honeywell held private meetings with BOE employees, which CT Page 4843 meetings were ordered by Borden, for purposes of ascertaining the Town's energy needs. Other potential vendors were excluded or otherwise not invited to attend these private meetings with Borden and other employees of the BOE.
Honeywell was provided access to the buildings and given other information well before the RFP was issued. During the initial walk-through Honeywell personnel were making notations on pre-printed diagrams which indicated what the energy needs were in the buildings at issue. During that initial walk through employees of Manchester and the BOE greeting employees of HEC and BCC with the following question "Are you more guys from Honeywell?"
The Honeywell Proposal is virtually identical to a specification used by another municipality in the State of Connecticut that is now a client of Honeywell.
The RFP at issue does not satisfy the requirements of Municipal Charter Provision § 5-22 for one or more of the following reasons:
 (A) The RFP is vague and does not sufficiently set forth what the BOE's needs are with respect to the Project. Proof of this fact is found in the Honeywell Proposal, which proposed items not called for or even requested by the RFP. Consequently, the lack of clarity in the RFP resulted in the Honeywell Proposal, including items which were not proposed by the other vendors;
 (B) The RFP did not specify any method for calculating energy savings. Thus, there was no uniform manner or method, or formula, of comparing the energy savings Honeywell proposed with the energy savings proposed by the other two vendors;
 (C) The BOE's and Town's acceptance of the Honeywell Proposal results in there being no competitive bidding with respect to a number of items which Honeywell included in its proposal and which were not proposed by any other vendor, nor even requested by the RFP; and
 (D) The RFP concerned fourteen buildings, whereas the Honeywell Proposal and now the contract which the BOE intends to enter into with Honeywell deals with fifteen different buildings. CT Page 4844
Moreover, the fact that the Town provided access to the buildings at issue before the scheduled initial walk-through is evidence of favoritism which the requirements of competitive bidding are intended to avoid.
Manchester and/or the BOE afforded Honeywell preferential treatment.
The bid process has been tainted in such a way that the requirements of competitive bidding and Municipal Charter Provision § 5-22 have not been satisfied.
The BOE, on the advice of Assistant Town Attorney, John F. Sullivan, voted on February 4, 1997 to waive the requirements of competitive bidding.
In the waiver of competitive bidding (the "Bid Waiver"), which the BOE approved over the objection of several of its members, it declared:
 A question has subsequently been raised as to whether the Town Charter requirements for competitive bidding were met by the RFP process.
 In order to initiate the RFP process, the Board would have to hire an independent engineer and other technical support as it does not have the technical expertise to design specifications on its own. It is estimated that this cost to be in the range of $200,000.00. In assuming the design responsibility, the Board would have difficulty procuring [sic] a guaranty as to cost savings from a bidder. In addition, if the project were to be rebid under the IFB [sic] process, the project would be delayed for several months. Accordingly, the IFB [sic] process would be inappropriate and impractical for this particular project.
BOE also said in the Bid Waiver that:
 It is also clear that a major portion of this contract is for professional services which do not require competitive bidding.
 The Town Attorney's Office has indicated that the RFP process would satisfy the competitive bidding requirement under CT Page 4845 Charter § 5-22; however, in order to put to rest all arguments regarding this issue, we are hereby waiving the requirement for competitive bidding.
The Waiver of Competitive Bidding was attached to the complaint.
Manchester then, on February 4, 1997, approved the BOE action to award the contract to Honeywell.
Manchester or the BOE does not have the power or authority to enter into a contract with Honeywell.
Any further action taken by Manchester or the BOE relative to the RFP process is null and void.
Plaintiffs have reason to believe that Manchester is receiving state assistance in whole or in part to fund the Project. As a result, Conn. Gen. Stat. § 10-287b mandates that the Town award the contract at issue to the "lowest responsible qualified bidder." Honeywell is not the lowest bidder. Moreover, that statute has been violated because the RFP does not satisfy the requirements of competitive bidding set forth therein.
Conn. Gen. Stat. § 10-287b has been violated because the requirements of competitive bidding cannot be waived under these circumstances.
In addition, the court notes that no other bidders or would-be bidders have joined in this action.
Law
Standing is in issue and plaintiffs' must demonstrate they have it. Sadloski v. Manchester, 235 Conn. 637, 648-649.
Plaintiffs' claims of standing are based on their claim that the agreement with Honeywell will cost the town money which will result in a tax increase and as they are taxpayers they will be pecuniarily injured.
The agreement is a self-funding contract and will cost the town no additional funds in excess of what it now pays for energy. CT Page 4846
The plaintiffs have failed to prove that the agreement between Honeywell and the town will increase costs to the town. The contract is for at least fourteen buildings and extends over a ten year period. It involves maintenance, replacement and repair of various energy consuming equipment, i.e. ventilating heating by both oil and gas, air conditioning and lighting. Plaintiffs have not alleged or proven even a colorable claim of pecuniary loss. American-Republican, Inc. v. Waterbury,183 Conn. 523, 527; Bassett v. Desmond, 140 Conn. 426, 430; Sadloski v.Manchester 228 Conn. 79, 83; Town of Danbury v. Lundstrom,15 Conn. Sup. 198.
The plaintiffs have no standing. This court has no jurisdiction and thus cannot determine the legality of illegality of the agreement.
Motion to dismiss is granted.
O'Neill, J.